SWYGERT, Senior Circuit Judge.
 

 This appeal from the district court’s order affirming the bankruptcy court’s award of certain expenses to a trustee in bankruptcy presents for review several questions concerning the relation of two provisions of the Bankruptcy Reform Act of 1978: 11 U.S.C. § 554(a), which provides:
 

 After notice and a hearing, [a] trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate;
 

 and 11 U.S.C. § 506(c), which provides that:
 

 [a] trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.
 

 For the reasons explained below, we vacate the order of the district court and remand the case for further proceedings.
 

 I
 

 On December 5, 1979, the bankruptcy court entered an order for relief under Chapter 7 of the Bankruptcy Code against the debtor, Trim-X, Inc.
 
 In re Trim-X, Inc.,
 
 No. 79-B — 40450 (Bankr. N.D.I11. Dec. 5, 1979). Therein the court designated the appellant, Maurice Levine, as trustee. At the time this order was entered Trim-X owned certain assets in which the appellee, Commercial Credit Business Loan, Inc. (“CCBL”), had a perfected security interest. These assets were housed in premises leased by Trim-X from the Warrenville Development Company (“WDC”).
 

 Following his appointment, the trustee employed a security company to protect the assets. He also had the assets appraised. The appraisal indicated that the assets held no equity for the estate; that their worth was less than the amount of CCBL’s secured interest. Thus, on December 20, 1979, the trustee filed a petition to abandon the assets under section 554. At the same time the trustee, relying on section 506(c), requested the bankruptcy court to order CCBL to reimburse him for expenses he had incurred in preserving the assets.
 

 CCBL filed an answer and counterclaim to the trustee’s petition on January 21, 1980. It did not object to the proposed abandonment, but did contest the trustee’s claim for expenses. On February 1, 1980, the bankruptcy court finally ordered the trustee to abandon the assets. The court, however, reserved ruling on the reimbursement question. Thereafter the trustee abandoned the assets and CCBL sold the same for an amount, as anticipated, that was less than its secured interest.
 

 On September 10 and October 14, 1980, the bankruptcy court held evidentiary hearings on the reimbursement question. The trustee claimed that under section 506(c) he was entitled to recover the reasonable, necessary expenses of preserving the assets from the date of his appointment (12/5/79) until the date of the court’s abandonment order (2/1/80); namely: (1) use and occupancy expenses of $15,000; (2) security costs of $2,667.40; and (3) utility charges of $1,367.71. CCBL objected, arguing, first, that the use and occupancy expenses were not necessary because the trustee had been under no legal obligation to the lessor, WDC, due to subrogation agreements and a general release between WDC and CCBL, and second, that none of the claimed expenses yielded a benefit to CCBL.
 

 
 *298
 
 On December 19, 1980, the bankruptcy court awarded the trustee $1,850 as the “reasonable, necessary costs and expenses of the preserving of these assets for the benefit of Commercial Credit.... ” Although the court’s explanation for that award is somewhat opaque, we glean the following analysis from its order. First, the court rejected CCBL’s contention that the trustee had not been obligated to WDC for the use and occupancy of the leased premises, reasoning that the agreements between WDC and CCBL did not affect the relationship between WDC and the trustee. Second, the court found that the expenses of preservation incurred by the trustee during the period of appraisal were not for the benefit of CCBL. The court assigned January 12, 1980 as the cutoff date in making that determination, concluding that the trustee could only recover expenses incurred from January 12 until February 1 (the date of the abandonment order). Third, the court further limited that base period on the ground that “the trustee did not immediately seek the court’s authorization to abandon the assets.” Although the court did not specify a time period in this regard, we assume it was referring to some part of the period from December 5 (the date of the trustee’s appointment) until December 20 (the date of the trustee’s abandonment petition). Based on these considerations, the bankruptcy court awarded the trustee $1,000 for use and occupancy, $500 for security costs, and $350 for utility charges.
 

 The trustee appealed the bankruptcy court’s order to the district court.
 
 [1]
 
 The district court affirmed the $1,850 award on the ground that it was not “clearly erroneous.”
 
 In re Trim-X, Inc.,
 
 No. 81-C-770, slip op. at 4 (N.D.I11. Sept. 23, 1981). The district court, however, did not review the bankruptcy court’s analysis. Rather, the court focused on the fact that CCBL’s security interest exceeded the value of the collateral. Referring to language from the legislative history of section 506(c),
 
 [2]
 
 the court suggested that when the value of the secured property is less than the amount of the secured claim an award to a trustee under section 506(c) could never be clearly erroneous as being too small.
 
 [3]
 
 The trustee appeals from that order.
 

 II
 

 We begin our analysis by noting that we cannot agree with the district court’s approach to the questions presented in this case. Section 506(c) makes no reference to the relative values of the property securing an allowed claim and the claim itself. In contrast, section 506(b) (which authorizes a trustee to recover certain additional costs) does contain such language. That section limits recovery to the “extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim. ...” We think that Congress’ omission of similar language from section 506(c) suggests that the relative values of the property and the secured claim are not relevant considerations under that section.
 

 Although the language from the House and Senate Reports cited above appears to lend support to the district court’s contrary interpretation of section 506(c), that support is undercut by further statements of the legislative leaders of both the House and Senate made upon introduction of amendments subsequent to the initial reports:
 

 
 *299
 

 Any time
 
 the trustee or debtor in possession expends money to provide for the reasonable and necessary cost and expenses of preserving ... a secured creditor’s collateral, the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party. (Emphasis added.)
 

 124 Cong.Rec. H11089 (Sept. 28, 1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 6436, 6451 (statement by Rep. Edwards); 124 Cong.Rec. S17406,
 
 reprinted in
 
 1978 U.S.Code- Cong.' & Ad.News 6505, 6520 (statement by Sen. DeConcini). Further, we note that even before the enactment of the Code in certain circumstances expenses of preservation were allowed to a trustee against secured property the value of which was less than the secured claim.
 
 See Textile Banking Co. v. Widener,
 
 265 F.2d 446 (4th Cir.1959);
 
 First Western Savings and Loan Ass’n v. Anderson,
 
 252 F.2d 544 (9th Cir.1958);
 
 Robinson v. Dickey,
 
 86 F.2d 147 (3d Cir.1929),
 
 cert, denied,
 
 281 U.S. 750, 50 S.Ct. 354, 74 L.Ed. 1161 (1930);
 
 In re Atlantic Boat Builders Co.,
 
 5 Bankr.Ct.Dec. 128 (Bankr.M.D.Fla.1979). Such an award has also been allowed in a post-Code Chapter 11 proceeding.
 
 In re Hotel Associates, Inc.,
 
 6 B.R. 108 (Bkrtcy.E.D.Pa.1980) (relying on section 506(c)).
 

 Based on this background and the language of the statute, we conclude that the relative values of the assets and the secured claim are not determinative factors in the section 506(c) analysis in this case. Rather, the focus must be on the express terms of the statute. The district court’s order offers no assistance in that regard. Thus we must look to the underlying bankruptcy court decision.
 

 Ill
 

 To recover section 506(c) expenses for preserving the debtor’s assets during the process of abandonment in this case the trustee had to prove that the expenses (1) were necessary, (2) benefited CCBL, and (3) were reasonable. The bankruptcy court concluded that the trustee met that burden for only $1,850 of his claimed expenditures. In analyzing that award we assess the bankruptcy court’s treatment of the three elements of proof separately.
 
 [4]
 

 A
 

 We turn first to the question of the necessity of the expenses claimed by the trustee. At the outset, the bankruptcy court correctly rejected CCBL’s claim that
 
 none
 
 of the trustee’s payments for use and occupancy were necessary because of agreements between CCBL and the lessor. Prior to the abandonment, the assets in question were the property of the estate, not of CCBL. The trustee, in his dealings with the lessor, was acting on behalf of the estate. Agreements between CCBL and the lessor could not have affected the trustee’s responsibility at that time.
 

 The bankruptcy court’s second finding regarding the necessity of the claimed expenses was that some of the expenses were unnecessary because the trustee failed to immediately seek the court’s authorization to abandon the assets. That finding was clearly erroneous.
 

 Section 554(a), which is a new statutory provision, does not specify a time period within which a trustee must initiate the abandonment process. Under pre-Code case law, a trustee had a “reasonable” time to act.
 
 See Stanolind Oil & Gas Co. v. Logan,
 
 92 F.2d 28 (5th Cir.1937),
 
 cert. denied,
 
 303 U.S. 636, 58 S.Ct. 522, 82 L.Ed. 1097 (1938). The primary reason for that rule was to afford the trustee an opportunity to ascertain “whether there [was] any profit to be expected to the estate.” 4
 
 Collier on Bankruptcy
 
 ¶ 554.02[1] (15th ed. 1982). Because the need for such a determination remains under the new statute, the same approach should apply.
 
 Id.
 

 
 *300
 
 In this case the trustee had to have the assets appraised before initiating abandonment. Nevertheless he filed the petition to abandon on December 20, only fifteen days after he was appointed. The bankruptcy court did not identify any unnecessary delay in the trustee’s actions. Under these circumstances, we find as a matter of law that the pre-petition period was not unreasonable.
 
 [5]
 
 Thus the expenses that accrued during that period were in fact necessary.
 

 Finally, the bankruptcy court did not expressly discuss the necessity of expenses that accrued after the trustee filed his petition to abandon, and it is not clear what effect that consideration had on the court’s ultimate conclusion. In this appeal, however, the trustee contends that all the expenses of preservation from the date of his petition until the date of the court’s abandonment order were necessary because he could not have abandoned the assets unilaterally. CCBL, on the other hand, argues that the trustee could have acted more expeditiously. Because this dispute implicates an issue of first impression under the Bankruptcy Code — whether a trustee may abandon property under section 554(a) without a formal court order — and because we must remand this ease for further consideration, we believe that some guidance on this question is appropriate.
 

 Prior to the passage of section 554 there was no statutory provision authorizing abandonment. Thus some confusion developed as to the need for a formal act by the court prior to abandonment.
 
 See
 
 4
 
 Collier on Bankruptcy, supra,
 
 ¶ 554.01. Pre-Code Bankruptcy Rule 608, adopted in 1973, clarified that uncertainty by mandating court approval.
 

 As noted earlier, new section 554(a) provides:
 

 After notice and a hearing,
 
 the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate. (Emphasis added.)
 

 Although the words “after notice and a hearing” on their face suggest the requirement of judicial involvement has been codified in the statute, the actual meaning of those words in this context is explained in 11 U.S.C. § 102:
 

 In this title—
 

 (1) “after notice and a hearing”, or a similar phrase—
 

 (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but
 

 (B) authorizes an act without an actual hearing if such notice is given properly and if—
 

 (i) such a hearing is not requested timely by a party in interest; or
 

 (ii) there is sufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act. ...
 

 Thus under the Code a trustee may abandon property without involvement of the court if no party in interest objects to the action.
 
 See In re Motley,
 
 10 B.R. 141 (Bkrtcy.M.D.Ga.1981);
 
 In re Peninsula Roofing & Sheet Metal,
 
 9 B.R. 257 (Bkrtcy. W.D.Mich.1981).
 
 [6]
 

 In the present case the trustee gave notice of his intent to abandon the assets on December 20. CCBL did not respond until January 21. At that time it did not object to the abandonment, but it did dispute the trustee’s claim for expenses. Abandonment and reimbursement, however, are separate questions under the Code. Thus, as of January 21 there clearly was no objection to the proposed abandonment and the trustee could have acted. The expenses that accrued after that date were not necessary.
 

 In sum, we conclude that the expenses of preservation from the date of the trustee’s appointment (12/5/79) until the date when
 
 *301
 
 he first could have abandoned the property (1/21/80) were necessary within the meaning of section 506(c).
 

 B
 

 We next consider to what “extent” these “necessary” expenses of preservation “benefited” CCBL. Initially we note that in its analysis of this question the bankruptcy court targeted January 12 as the date the trustee’s appraisal was completed. That finding was clearly erroneous. The record indicates that the appraisal was completed prior to the filing of the trustee’s petition to abandon on December 20. That problem aside, the bankruptcy court found that the expenses incurred prior to the time the trustee determined Trim-X had no equity in the assets were not for the benefit of CCBL. We agree with that conclusion to the extent it applies to expenses incurred before the trustee’s commitment to abandon on December 20.
 

 Traditionally administrative expenses have not been charged against secured creditors.
 
 See In re Tyne,
 
 257 F.2d 310 (7th Cir.1958). The reason for that rule is that a trustee in bankruptcy acts “not on the authority of [secured creditors] and for their interest, but on the authority of the court and for the interest of the general creditors.”
 
 Robinson v. Dickey,
 
 36 F.2d at 149. An exception to that general rule has been recognized, however, when expenses of preservation are incurred primarily for the benefit of the secured creditor or where the creditor caused or consented to such expenses.
 
 See id.; In re Tyne, supra; Equitable Loan & Sec. Co. v. Moss & Co.,
 
 125 F. 609 (5th Cir.1903); see
 
 generally
 
 4B
 
 Collier on Bankruptcy
 
 ¶ 70.99[6] (14th ed.1978);
 
 cf. Textile Banking Co. v. Widener, supra; First Western Savings and Loan Ass’n v. Anderson, supra; In re Atlantic Boat Builders Co., supra
 
 (reorganization cases). That exception has been codified in section 506(c).
 
 See
 
 S.Rep. No. 989, 95th Cong., 2d Sess. 68,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5854; H.R.Rep. No. 595, 95th Cong., 1st Sess. 357,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6313 (subsection (c) codifies current law). Although the emphasis under the new statute is on “benefit” to the secured creditor, considerations of “consent” and “causation” are still relevant.
 
 See In re Hotel Associates, Inc., supra,
 
 6 B.R. 108 at 112 (Chapter 11 proceeding).
 

 The bankruptcy court’s determination that the expenses incurred prior to the trustee’s petition for abandonment were not for the benefit of CCBL is consistent with this rule. Although the secured creditor eventually “benefited” from these expenses in the sense that it received the assets unharmed, it did not in any way consent to or cause these expenses. Further, placing the responsibility for these expenses on a secured creditor would discourage a trustee from taking reasonable steps to assess an estate’s position. As explained in
 
 In re Codesco, Inc.,
 
 18 B.R. 225, 230 (Bkrtcy.S.D.N.Y.1982), section “506(c) was not intended as a substitute for the recovery of administrative expenses that are appropriately the responsibility of the debtor’s estate.”
 

 In contrast, the expenses that accrued after the trustee filed his petition to abandon not only went to preserving assets that ultimately were abandoned to CCBL, but also were “caused” by the secured creditor in the sense that it failed to promptly respond to the trustee’s petition.
 
 See In re Hotel Associates, Inc., supra; Robinson v. Dickey, supra; Equitable Loan & Sec. Co. v. Moss & Co., supra; cf. First Western Savings and Loan Ass’n v. Anderson,
 
 252 F.2d at 548 n. 8 (Among the factors to be considered in determining whether reorganization expenses should be charged against mortgaged property is: “Were the secured creditors responsible for any delays in connection with the proceedings... ?”). Thus the necessary expenses of preservation that benefited the secured creditor in this case accrued from the date of the trustee’s petition (12/20/79) until the date of CCBL’s answer (1/21/80).
 

 C
 

 Our final inquiry under section 506(c) is the reasonableness of the allowed
 
 *302
 
 expenses. This is the most problematic aspect of the bankruptcy court’s decision. Notwithstanding the differences explained above in regard to its calculation of the time period during which necessary expenses were incurred for the benefit of CCBL, in the end the bankruptcy court narrowed that period to approximately one month.
 
 In re Trim-X, supra,
 
 slip op. at 5. The court acknowledged that the reasonable rental value of the premises for one month was $9,400.
 
 [7]
 
 Further, the record shows that. security costs for one month were approximately $1,340 and utility charges for such a period were approximately $685.
 
 [8]
 
 Yet the bankruptcy court, without explanation, concluded that the “reasonable, necessary costs and expenses of the preserving of these assets for the benefit of Commercial Credit” were $1,000, $500, and $350, respectively. We can discern no basis for those totals and thus are completely unable to gauge their reasonableness.
 

 IV
 

 In conclusion, we vacate the district court’s affirmance of the bankruptcy court’s ruling and remand the case to the district court with instructions that it refer the matter to the bankruptcy court for a reassessment, consistent with this opinion, of the section 506(c) expenses to which the trustee is entitled. The bankruptcy court should explain its calculation of the amount of these “reasonable” expenses.
 

 The district court order is vacated and the case is remanded for further proceedings consistent with this opinion. It is further ordered that each party is to bear its own costs on appeal.
 

 [1]
 

 . CCBL did not cross-appeal from the bankruptcy court’s award.
 

 [2]
 

 . [Section 506(c) ] also codifies current law by permitting the trustee to recover from property whose value is greater than the sum of the claims secured by a lien on that property the reasonable, necessary costs and expenses of preserving, or disposing of, the property.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 68,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5854; H.R.Rep. No. 595, 95th Cong., 1st Sess. 357,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5963, 6313.
 

 [3]
 

 .The district court noted: “We have difficulty in rationalizing any award by the trustee against Commercial Credit, since its secured interest exceeded the value of the collateral”
 
 In re Trim-X, supra,
 
 slip op. at 4-5.
 

 [4]
 

 . As to factual questions we must accept the bankruptcy court’s findings unless they are “clearly erroneous.”
 
 Caríni v. Matera,
 
 592 F.2d 378 (7th Cir.1979);
 
 see
 
 1
 
 Collier on Bankruptcy
 
 ¶ 3.03[9][b] (15th ed.1982).
 

 [5]
 

 . This holding is limited to the facts of this case and should not be read as endorsing a specific time period for initiating abandonment.
 

 [6]
 

 . Note, in contrast, that the language of section 554(b) (which deals with abandonment initiated by a “party in interest”) specifically calls for an “order” by the court.
 

 [7]
 

 . We note that Trim-X leased one of the buildings on the premises to Keson Industries, an unrelated company, for $1,900 monthly. Amounts received by Trim-X under this sublease, of course, must be deducted from the rental value of the premises to arrive at the occupancy expenses incurred by the trustee in preserving the assets.
 

 [8]
 

 . We base these approximations on the total amounts claimed by the trustee for the period from December 5, 1979 until February 8, 1980.