**In the Matter of: S & S INDUSTRIES, INC., Detroit Plastic Products, Anchor Bay Plastics, S & S Products, and Star Plastics Co., Inc., Debtors.**

**Bankruptcy Nos. 81–02303–B to 81–02306–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

June 10, 1983.

Bodman, Longley & Dahling by John E. Chosy, Detroit, Mich., for Foothill Capital Corp.

Rice, Rice & Gilbert by Allan W. Gilbert, Detroit, Mich., for Creditors' Committee.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

The question presented is whether a secured creditor should be compelled to pay the legal fees incurred by a creditors' committee in connection with the administration of a chapter 11 proceeding.

S & S Industries, Inc., (debtor) filed a petition for reorganization under chapter 11 of Title 11 of the United States Code on April 20, 1981. A creditors' committee was appointed on July 10, 1981, and retained Rice, Rice and Gilbert as counsel. In July of 1981, the debtor filed an application for permission to borrow sufficient funds to liquidate existing secured debt and to replenish its inventories from Foothill Capital Corporation (Foothill). This application was granted by an order dated July 13, 1981. The order provided that the loans from Foothill were to be secured by all of the debtor's assets. Pursuant to that order, Foothill advanced in excess of $6 million dollars to the debtor. A trustee was appointed on March 23, 1982. The trustee determined that there was no reasonable expectation that the debtor could effectuate a plan of reorganization and moved to convert the chapter 11 proceeding to a chapter 7 case. On April 29, 1982, after a hearing on the trustee's motion, this court converted the case. Counsel for the creditors' committee has filed an application for compensation in the amount of $16,442.50 for legal services rendered to the creditors' committee. All of the legal services performed involved general case administration. No unencumbered assets are available to pay the compensation requested. Counsel for the creditors' committee contends that since the estate does not have any funds to compensate him, Foothill should be required to bear this cost. In support of this contention, counsel relies on *Citibank, N.A. v. Official Creditors' Committee of Wilson Freight Co. (In re Wilson Freight Co.)*, 21 B.R. 398 (D.C.S.D.N.Y. 1982).

Under section 62 of the Bankruptcy Act, the court was empowered to allow reasonable compensation for services rendered and reimbursement for actual and necessary expenses incurred by court appointed officers in connection with the administration of a bankruptcy case. Such compensation and expenses were accorded priority status by virtue of section 64(a)(1) of the Act and were to be paid out of unencumbered funds generated by the estate. *See Gugel v. New Orleans Nat. Bank*, 239 F. 676 (5th Cir. 1917); *In re Hansen & Birch*, 292 F. 898 (N.D.Ga.1923); *Lerner Stores Corp. v. Electric Maid Bake Shops (In re Electric Baking Co.)*, 24 F.2d 780 (5th Cir.1928); *In re Louisville Storage Co.*, 21 F.Supp. 897 (W.D.Ky. 1936).

However, in cases where the trustee administered encumbered property, the trustee attempted to persuade courts to require the secured creditor to bear the costs incurred by them in administering such property. Not all courts were persuaded. Some held that a secured creditor could not be compelled to pay any costs of administration unless the secured creditor consented to have his property dealt with by the trustee. *See* 4B *Collier on Bankruptcy* ¶ 70.99 (14th ed. 1978) [hereinafter cited as *Collier*]. Generally, however, the cases held

that, "irrespective of the lienor's posture *vis-a-vis* the sale, the proceeds of a confirmed sale of the property are chargeable with the costs of preserving the property and converting it to cash for the lienor's benefit." Kennedy, *An Adversary Proceeding under the New Bankruptcy Rules, with Special Reference to Sales Free of Liens,* 79 Com.L.J. 425, 439 (1974). *See also* 4B *Collier, supra,* at ¶ 70.99. Absent consent, a secured creditor could not be "saddled with all the expenses incurred in connection with the general administration of the estate." *In re Codesco, Inc.,* 18 B.R. 225, 228 (Bkrtcy. S.D.N.Y.1982). A secured creditor who maintained an adversary posture was able "to restrict the deduction of expenses to those that directly benefitted him and that he would necessarily have incurred in enforcing his lien." Kennedy, *supra,* at 439.

Section 330 of the Code tracks section 62 of the Bankruptcy Act and also allows reasonable compensation and reimbursement of actual and necessary expenses to court appointed officers. As under the Bankruptcy Act, such costs and expenses are entitled to priority status. 11 U.S.C. § 507(a)(1). The Code, however, substitutes a statutory base for the equitable doctrine invoked by pre-Code cases to allocate expenses of administration between a trustee and a secured creditor.[1] The Code addresses this question in section 506(c) which provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

§ 506(c).

Section 506(c) enables a trustee to recover from a secured creditor the reasonable necessary costs and expenses "of preserving, or disposing of," encumbered property "to the extent of any benefit to" such creditor. § 506(c).[2] It does not confer this right upon a creditors' committee. *In re New England Carpet Co.,* 28 B.R. 766 (Bkrtcy.D. Vt.1983). The reason for denying this right to a creditors' committee is self-evident. An unsecured creditors' committee is appointed to protect the interests of unsecured creditors. Its duties are spelled out in section 1103.[3] It may investigate the

**1.** A statement that no statutory base existed for charging a secured creditor for expenses under the Bankruptcy Act is not completely accurate. Section 246 of chapter X authorized the court to allow reasonable compensation for services rendered and reimbursement for proper costs and expenses incurred prior to the dismissal of the case or order of adjudication. Pursuant to this section, the courts subjected a secured creditor to liability for the trustee's compensation and expenses for services which were rendered to preserve and to protect encumbered property or which otherwise benefitted the secured creditor. *First W. Sav. & Loan Ass'n v. Anderson,* 252 F.2d 544 (9th Cir.1958). The question whether a secured creditor could be charged with expenses of administration generally did not arise in a chapter XI proceeding, since an arrangement under chapter XI could not deal with secured debt. *S.E.C. v. United States Realty & Improvement Co.,* 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

**2.** The House and Committee reports to section 506(c) state that subsection (c) "codifies current law by permitting the trustee to recover from property whose value is greater than the sum of the claims secured by a lien on that property that reasonable, necessary costs and expenses of preserving, or disposing of, the property. The recovery is limited to the extent of any benefit to the holder of such claim." H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); S.R.Rep. No. 898, 95th Cong., 2d Sess. 68 (1978), *reprinted in* 1978 U.S.Code & Cong. Ad.News 5787, 5963, 6313. This statement is not literally true since "hardly any phase of the bankruptcy law has been plagued with so many inconsistent generalities, irreconcilable rules and principles, disagreements between circuits and even within circuits (apparently without any awareness thereof) and loose, indiscriminate statement of rules and citation of authority." 4B *Collier on Bankruptcy* ¶ 70.99 at 1223–25 (14th ed. 1978).

**3.** The functions of an unsecured creditors' committee are spelled out in section 1103(c), which provides that a creditors' committee may—

> (1) consult with the trustee or debtor in possession concerning the administration of the case;
>
> (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
>
> (3) participate in the formulation of a plan, advise those represented by such committee

financial condition of the debtor, participate in the formulation of the plan, request the appointment of a trustee or examiner where warranted, and perform such other services as are in the interests of the creditors they represent. A creditors' committee is not charged, as a trustee is, with preserving or disposing of property. Therefore, Congress had no reason to provide reimbursement to creditors' committees for such costs. This conclusion is also supported by the legislative history of section 506(c):

> Any time the trustee or debtor in possession expends money to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.

124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); 124 Cong.Rec. S17411 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini).

Nor is *Wilson Freight Co.* persuasive authority for counsel's contention that Foothill should be compelled to contribute to his legal fees incurred in representing the creditors' committee. In *Wilson,* the debtor at the time of filing the chapter 11 proceeding was indebted to the secured creditor in an amount exceeding $22 million dollars. The debt was secured by all of the debtor's assets. Shortly after the petition was filed, the bankruptcy judge suggested that the secured creditor's "proper course" might be to abort the chapter 11 proceeding and take possession of all of its collateral. 21 B.R. at 399. The secured creditor did not follow this suggestion but continued to advance additional funds of approximately $12 million dollars to keep the debtor afloat. During the course of the proceeding, counsel for the creditors' committee filed an application for interim compensation. The bankruptcy judge found that counsel had been "very active in the case and [had] taken a very strong position in preserving and protecting the assets which ... benefitted all who [had] an interest in the assets, including the secured party," *id.* at 400, and awarded an interim fee to be paid from funds in which the secured creditor had a security interest. The bankruptcy judge's ruling was sustained on appeal. A careful reading of the court's opinion suggests that the basis for both the bankruptcy judge's and the district court's ruling is that the secured creditor consented to the payment of expenses of administration.

■ A secured creditor may consent to pay the expenses incurred by a creditors' committee. However, such consent is not to be lightly inferred. It is not to be inferred merely because a secured creditor cooperates with the debtor. *In re New England Carpet Co.* Creditor cooperation is a significant factor in consummating a successful chapter 11 proceeding. Most problems involving secured debt in a chapter 11 are generally resolved without litigation. To subject a secured creditor to charges for expenses incurred by a creditors' committee merely because a secured creditor cooperates with the debtor would compel the secured creditors to move immediately upon the filing of a case to convert or dismiss the case to avoid exposure for such expenses. To compel a secured creditor to take such action would unnecessarily add to litigation in bankruptcy courts, impede the debtor's attempts at rehabilitation, and burden estates and creditors with unnecessary costs. To hold that mere cooperation with the debtor exposes a secured creditor to payment of all expenses of administration would also make it difficult, if not impossible, to induce new lenders to finance a chapter 11 operation. Such a holding would make the promise of chapter 11 a mirage. It is not necessary to determine whether

---

of such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan;

    (4) request the appointment of a trustee or examiner under section 1104 of this title, if a trustee or examiner, as the case may be, has not previously been appointed under this chapter in the case; and

    (5) perform such other services as are in the interest of those represented.

11 U.S.C. § 1103(c).

the facts in *Wilson* justify a finding of consent. In the instant case, no basis exists for finding that the secured creditor consented to the payment of any expenses. In fact, the order authorizing the loan to the debtor specifically provided that Foothill would not be obligated for any costs or expenses of administration incurred in the bankruptcy proceeding.[4]

In its opinion sustaining the bankruptcy judge, the court also stated that:

> Congress would not have provided the elaborate procedures envisioned by Chapter 11—including specific authority for the appointment of committees for unsecured creditors and their counsel—unless it intended such provisions to be made workable by permitting the compensation of committee counsel in appropriate situations.

*Id.* at 401 (footnote omitted). Counsel relies upon this language to sustain its contention that the Code authorizes a court to surcharge a secured creditor for legal fees incurred by a creditors' committee. The Code authorizes the appointment of a creditors' committee and permits the committee to retain the necessary personnel to carry out its functions. §§ 1102, 1103. The Code also provides that the expenses incurred by the committee are to be borne by the estate. § 330. However, it does not follow that in the event the estate has no unencumbered funds from which to pay such expenses, the secured creditor becomes obligated to satisfy these obligations. A secured creditor, unless he consents, cannot be compelled to finance a chapter 11 proceeding except to the limited extent provided for in section 506(c). For the foregoing reasons, counsel's request that Foothill be surcharged for the legal expenses incurred by the creditors' committee is denied.

An appropriate order to be submitted.

---

**4.** However, this negation of liability clause in the order would not preclude a trustee from recovering the costs and expenses incurred for the benefit of the secured creditor.