VAN GRAAFEILAND, Circuit Judge:
General Electric Credit Corporation (GECC) appeals from an order of the United States District Court for the Southern District of New York (Broderick, J.) which affirmed a bankruptcy court order awarding appellees interim compensation for professional services and disbursements and directing that payment thereof be made from assets of the debtors in possession in which GECC had a security interest. For reasons hereafter discussed, we reverse.
On July 21, 1981, Flagstaff Foodservice Corporation and its related companies (Flagstaff) filed petitions for reorganization under chapter 11 of the Bankruptcy Reform Act of 1978 (the Code), 11 U.S.C. §§ 1101 et seq. As permitted by the Code, 11 U.S.C. §§ 1107,1108, the companies continued to operate their businesses as debtors in possession.
GECC had been financing Flagstaff’s operations since 1978 by making loans and advances on accounts receivable and inventory. As of July 21, 1981, Flagstaff owed GECC approximately $22 million, which was secured by assets worth $42 million. Shortly before commencement of the chapter 11 proceedings, Flagstaff’s attorneys met with representatives of GECC to obtain immediate shortterm financing in order to maintain sufficient cash flow to support Flagstaff’s operations. These negotiations resulted in an order which permitted Flagstaff to use up to $750,000 of GECC’s collateral for the limited period of five days. Flagstaff’s attorneys also prepared an .application for a more permanent financing arrangement with GECC. An order (the “Financing Order”) was issued by the bankruptcy court authorizing Flagstaff to borrow additional money from GECC, the loans to be secured by a super-priority interest in all present and future property of the estate. In pertinent part, the order provided that:
any and all obligations and Liabilities of Borrowers and debtors in possession to GECC (as defined in the Loan Agreement and the Security Agreement) shall have priority in payment over any other debts or obligations now in existence or incurred hereafter of Borrowers and debtors in possession and over all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, and said Liabilities and obligations of Borrowers and debtors in possession to GECC shall be secured by a first and prior lien on all property of whatever kind and nature of the Borrowers and debtors in possession, and proceeds thereof, until all such obligations and Liabilities of the Borrowers and debtors in possession to GECC shall have been paid in full.
By December 21, 1981, Flagstaff had generated enough income from its accounts receivable to pay all of GECC’s pre-petition liabilities. However, during the chapter 11 proceedings, GECC advanced an additional $9 million to Flagstaff pursuant to the Financing Order. Despite this infusion of funds, the Flagstaff reorganization ultimately failed. No chapter 11 plan ever *75 was- proposed; no bulk purchaser appeared; and no buyer emerged to take over any of the debtor companies. Accordingly, although Flagstaff’s indebtedness to GECC had been reduced substantially, the realizable value of the collateral which remained was insufficient to satisfy the unpaid balance.
The issue before us is whether, despite the super-priority lien given GECC in the Financing Order, the bankruptcy court subsequently might direct that interim fees and disbursements of attorneys and accountants be paid from the encumbered collateral. The bankruptcy court awarded Levin & Weintraub, attorneys for the debt- or, $57,403.57; Bell, Wolkowitz, Kalnick, Klee, Green & Beckman, co-counsel to the Levin firm, $130,479.77; Angel & Frankel, attorneys for the Committee of Unsecured Creditors, $38,388.40; and Ernst & Whinney, the Committee’s accountants, $22,966. In each instance, the award was 70% of the amount claimed. These awards were affirmed by the district court. We hold this to be error.
Section 364(c)(1) of the Code authorizes the issuance of a financing order, such as the one secured by Flagstaff, which will have “priority over any or alb administrative expenses of the kind specified in section 503(b) or 507(b) of [the Code].” Among the administrative expenses listed in section 503(b), and thus reduced in priority by the Flagstaff Financing Order, are “compensation'and reimbursement awarded under section 330 of [the Code].” Section 330 is the section that authorizes the bankruptcy court to make awards for services and expenses to attorneys and professional persons representing debtors or creditors’ committees, which awards may be made on an interina basis pursuant to section 331.
Looking to the plain language of these sections, as we are bound to do, Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917), we conclude that GECC’s security interest has priority over appellees’ claims for professional services, In re Malaspina, 30 B.R. 267, 270 (Bkrtcy.W.D.Pa.1983); 3 Collier on Bankruptcy ¶ 507.05, at 507-44 (15th ed. 1984). To the extent that In re Callister, 15 B.R. 521 (Bkrtcy.D.Utah 1981), appeal dismissed, 673 F.2d 305 (10th Cir. 1982), relied upon by appellees, is to the contrary, we decline to follow it. Where, as here, the statutory language clearly expresses the congressional intent, a court may not read another meaning into- the statute in order to arrive at a result which the court deems preferable. Central Trust Co. v. Official Creditors’ Committee of Geiger Enterprises, Inc., 454 U.S. 354, 359-60, 102 S.Ct. 695, 697-98; 70 L.Ed.2d 542 (1982); In re Fidelity Mortgage Investors, 690 F.2d 35, 39-40 (2d Cir. 1982) . Attorneys may, as Levin & Weintraub did here, secure a portion Of their fee in advance. See Matter of Arlan’s Dep’t Stores, Inc., 615 F.2d 925, 935-37 (2d Cir. 1979). If attorneys need more encouragement than this to participate in chapter 11 proceedings, Congress, not the courts, must provide it. Under the law as it presently exists, knowledgeable bankruptcy attorneys must be aware that the priority ordinarily given to administration expenses may “prove illusive in light of the various provisions in the Code for competing or super-priorities.” 2 Collier on Bankruptcy 11 364.02, at 364-6 (15th ed. 1984). Section 364(c)(1) is such a provision.
We conclude that the district court erred in holding that section 330 “empow.er[ed] the Bankruptcy Judge to make awards without reference to any schedule of priorities, without reference to any contractual agreement with respect to those priorities and on the basis of his assessment in the course of supervising the bankruptcy proceeding that if actual and necessary services ■ have been rendered, they should be compensated for.” We hold, instead, that any fees payable from GECC’s collateral must be for services which were for the benefit of GECC rather than the debtor or other creditors. See Matter of Trim-X, Inc., 695 F.2d 296, 301 (7th Cir. 1983) . Provision for such allowance is made in section 506(c), which provides: *76 “The trustee [debtor in possession] may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.” Congress’s express intent in enacting section 506(c) was to ensure that, any time a debtor in possession “expends money to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor’s collateral, the ... debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.” 124 Cong.Rec. H11089 (daily ed. Sept. 28, 1978) (Statement of Rep. Edwards), reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 6436, 6451. That is not the situation disclosed in appellees’ affidavits.
It is undisputed that the chapter 11 proceedings were initiated with the hope of effectuating Flagstaff’s rehabilitation and with optimism that this could be accomplished. Indeed, a less forthright purpose in seeking chapter 11 relief might preclude the awarding of any fees at all. See In re Casco Fashions, Inc., 490 F.2d 1197, 1204 (2d Cir.1973). Such benefits as might be said to have accrued to GECC from the attempt to reorganize were incidental to the reorganization efforts and did not fall within the intended scope of section 506(c). See Matter of Trim-X, supra, 695 F.2d at 301; In re Codesco, Inc., 18 B.R. 225, 228-30 (Bkrtcy.S.D.N.Y.1982).
As a matter of fact, it requires rather strained logic to conclude that GECC actually benefited from appellees' services. At the outset of the chapter 11 proceedings, GECC’s $22 million claim against Flagstaff was secured by $42 million in collateral. When, the chapter 11 proceedings aborted, the indebtedness had been reduced to $4 million, but this balance was substantially under-collateralized. In return for this “benefit”, appellees now seek to reduce the remaining collateral another quarter of a million dollars to pay their interim fee allowances.
Although GECC requested a hearing in connection with the fee applications, none was held, appellees being content to rest on their written applications. We are as well equipped as the district court to evaluate these documents. See Forts v. Ward, 566 F.2d 849, 852 n. 8 (2d Cir.1977). Having done so, we are satisfied that, conclusory allegations aside, they do not justify the allowances made herein. For example, Angel & Frankel’s application, which is not atypical, states that “[a]ll of the professional services for which an interim allowance is being sought were rendered solely on behalf of the Committee in connection with the Debtors’ Chapter 11 proceedings, pursuant to the responsibility of Applicant as attorneys for the Committee, and in accordance with the instructions of the Committee, and not on behalf of any other person, as such term is defined in Section 101(30) of the Code.” The application then outlines the steps which Angel & Frankel took to carry out their duties to the Committee, including, among other things, an extensive court challenge to the “validity, extent and priority” of GECC’s security interest. Angel & Frankel, contend that they “performed services which benefited all creditors of the estate including GECC.” Angel & Frankel’s Brief 17. The district court, whose opinion contains no reference whatever to section 506(c), adopted this argument, holding that the “context” of the case “necessarily imports” that appellees’ services benefited GECC “by preserving or enhancing the bankrupt estate.”
Approval of the fee award on this basis was error. Payment of administration expenses traditionally has been the responsibility of the debtor's estate, not its secured creditors. Matter of Trim-X, Inc., supra, 695 F.2d at 301; Seaboard Nat. Bank v. Rogers Milk Products Co., 21 F.2d 414, 417 (2d Cir.1927). However, if expenses for the preservation or disposition of property are incurred primarily for the benefit of a creditor holding a security interest in the property, such expenses, properly identified, may be charged against the secured creditor. Matter of Trim-X, Inc., supra, *77 695 F.2d at 301; In re Korupp Associates, Inc., 30 B.R. 659, 661 (Bkrtcy.D.Me.1983). Appellees had the burden of proving that the administration expenses for which they sought recovery were covered by section 506(c). Id. They failed to sustain that burden.
We find no merit in appellees’ alternative argument that GECC impliedly consented to bearing the costs of their professional services by employing the chapter 11 procedure to effect the disposition of its collateral. See In re Hotel Associates, Inc., 6 B.R. 108, 113-14 (Bkrtcy.E.D.Pa. 1980). Appellees assert that GECC’s active involvement in devising a program aimed at reducing its secured claims justified resorting to the secured assets for payment of the interim fees. Although a secured creditor may consent to bearing the costs of professional fees incurred by a debtor in possession, “such consent is not to be lightly inferred.” In re S & S Indus., Inc., 30 B.R. 395, 398 (Bkrtcy.E.D.Mich.1983). “It is not to be inferred merely because a secured creditor cooperates with the debt- or.” Id.; see Law Research Service, Inc. v. Crook, 524 F.2d 301, 310 (2d Cir.1975). We find no evidence of such consent in appellees’ fee applications. Moreover, the existence of consent is negatived by the provisions of the Financing Order.
Saddling unconsenting secured creditors with professional fees, such as are sought by appellees, would discourage those creditors from supporting debtors’ reorganization efforts. “To hold that mere cooperation with the debtor exposes a secured creditor to payment of all expenses of administration would ... make it difficult, if not impossible, to induce new lenders to finance a chapter 11 operation.” In re S & S Indus., Inc., supra, 30 B.R. at 398. The Financing Order granting GECC a super-priority position was intended to give GECC protection against the very awards made herein. The lack of sufficient unencumbered assets to pay appellees’ fees is not an adequate basis for denying GECC its super-priority status. See Seaboard Nat. Bank v. Rogers Milk Products Co., supra, 21 F.2d at 417. Although it has been well said that “professionals should not be expected to finance the administration of liquidation or reorganization cases,” 2 Collier on Bankruptcy 7 331.01, at 331-3 (15th ed. 1984), “it does not follow that in the event the estate has no unencumbered funds from which to pay such expenses, the secured creditor becomes obligated to satisfy these obligations.” In re S & S Indus., Inc., supra, 30 B.R. at 399.
As stated above, GECC, alone, sought a hearing in connection with appellees’ fee applications. Appellees have been content to rest On their written submissions. Because those documents do not warrant the allowances made herein, the order of the district .court is reversed. The district court is instructed to direct the bankruptcy court to disallow payment of appellees’ claims from the assets of the estate in which GECC has a security interest covered by the Financing Order.