### In re SPORTS INFORMATION DATA BASE, INC., Debtor.

Bankruptcy No. 85 B 11128 (TLB).

United States Bankruptcy Court, S.D. New York.

Sept. 18, 1986.

Cole, Schotz, Bernstein, Meisel & Furman, by Gerald H. Gline, Rochelle Park, N.J., for Heights Plaza Associates.

Skadden, Arps, Slate, Meager & Flom, by Carolyn S. Schwartz, New York City, for Mead Data Cent. Inc.

Salomon, Green & Ostrow, by David Green, New York City, for trustee.

DECISION ON MOTION OF HEIGHTS PLAZA ASSOCIATES FOR PAYMENT OF ADMINISTRATIVE CLAIM PURSUANT TO SECTION 506(c)

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

Before the court is a motion brought by the debtor's former landlord seeking payment of its administrative rent claim from proceeds of an auction sale of the debtor's equipment which equipment was fully encumbered by a security interest. For the reasons below, the motion is denied.

FACTS

The pertinent facts are not in dispute. On July 12, 1985, an involuntary petition under chapter 11 of the Bankruptcy Code ("Code") was filed against Sports Information Data Base, Inc. ("SIDB") and on November 13, 1985, an order for relief was entered. Thereafter, on December 5, 1985, the principals of SIDB attempted to convert the case to a liquidation under chapter 7 but were stymied by both their inability to appear *pro se* for a corporate debtor and Code section § 1112(a)(2) which expressly disallows a debtor the automatic right to convert an involuntary chapter 11 to a chapter 7 case. (Trans. of Hearing of Dec. 5, 1985.) Consequently, the United States Trustee moved by Order to Show Cause to convert the case and on December 17, 1985, the case was converted to chapter 7.[1] (Trans. of Hearing of Dec. 17, 1985.)

Prior to the conversion, the debtor's landlord, Heights Plaza Associates ("Heights Plaza") brought successive motions to compel the payment of rent and lift the auto-

---

1. This case is assigned to the Honorable Tina L. Brozman who presided over the hearings in this case prior to this motion. In her absence, the undersigned is entertaining this motion.

matic stay to secure possession of the premises. As a result, administrative rent payments were made. However the debtor defaulted and the landlord brought a third motion this time to lift the stay to direct SIDB to vacate the premises. About this time, Mead Data Central, Inc. ("Mead"), a secured creditor, also moved to lift the stay to allow them to foreclose on their collateral. Mead claimed a security interest in all the debtor's equipment which was housed on the debtor's premises. In light of the then pending motion of the United States Trustee to convert the case, Bankruptcy Judge Brozman adjourned both motions, that of Heights Plaza and Mead, until the conversion motion was decided. Twelve days later, on December 17, 1985, the case was converted. Judge Brozman then properly adjourned both motions due to the imminent appointment of a chapter 7 trustee who would properly assess the estate and respond to the motions. More particularly, Judge Brozman noted that consideration of the landlord's motion would be improper at that time since the Code afforded the trustee sixty days to determine whether he would assume or reject the lease. However, in recognition of the landlord's continuing efforts and in light of the time which lapsed due to the procedural posture of this case, Judge Brozman shortened the trustee's time to thirty days. Over objection by Mead, it was still expressly prohibited from taking steps to foreclose. (Trans. of Hearing of Dec. 17, 1985.)

Upon conversion to chapter 7, David Green was appointed trustee ("Trustee"). He made no motion before this court to assume the lease. He remained on the premises, although he informed this court for the first time at the hearing on this motion that he never intended to assume the lease because the rent was at market value. He did however enter into a Stipulation with Mead ("Stipulation") which provided *inter alia* he could sell the equipment free and clear of Mead's lien which, if valid, would attach to the proceeds. A provision was included which allowed the Trustee to recover from the proceeds rea-

sonable and necessary costs and expenses of the sale. The provision read as follows:

Upon appropriate application to the court and on appropriate notice to Mead, the trustee may recover from the proceeds of the sale of the New Jersey Collateral (the "Proceeds") the reasonable and necessary costs and expenses of disposing thereof, without regard to the estate's equity, if any, therein, consisting of the trustee's reasonable fees, the trustee's reasonable legal fees and related costs and expenses directly associated with the trustee's reasonable fees and reasonable legal fees such as photocopying, advertising, and courier charges incurred in connection with the sale of the New Jersey Collateral and any auctioneer's reasonable fees, costs and expenses in arranging, preparing for and conducting a sale of the New Jersey Collateral.

Rent is specifically omitted from the above enumerated expenses which Mead agreed to pay. Both the Trustee and Mead have disclosed to this court that the issue of rent arose when drafting and negotiating the Stipulation. The Trustee asserted it should be included and Mead asserted it was not an expense they ought to bear, presumably because they maintained it was not the type of expense subject to section 506(c) recovery. Couched in the terms of both parties, they "agreed to disagree"; the result was that rent was not included.

Also included in the Stipulation was a provision which expressly reserved the Trustee's right to challenge the security interest. Stipulation at ¶ 6.

An auction was held on January 14, 1986 and the property was removed soon thereafter. The Trustee ultimately vacated the premises on January 21, 1986. However, it was not until February, 1986 that the Trustee determined he would not challenge Mead's security interest. The auction yielded gross and net proceeds of approximately $121,000.00 and $95,000.00, respectively. Mead's lien was in the approximate amount of $197,000.00. While there is only speculation of assets being brought into the estate in the future, it is clear that at

this time there is a significant shortfall prompting Heights Plaza to bring this motion.

The motion is mounted on two grounds. First, the landlord argues that the secured creditor should bear the rent expense as a necessary cost of preserving and disposing of its collateral under 11 U.S.C. § 506(c) because the only purpose of staying on the premises was to auction off Mead's collateral. Next it argues that Mead consented to do so by virtue of both the Stipulation and its actions. The Trustee joins in the landlord's motion however in a very obfuscatory manner. He first asserts that *if* the rent claim is sustained, it should be paid directly from the proceeds of Mead's collateral. However, he avoids the section 506(c) argument asserting instead that the Stipulation itself supports his position. Mead counters first that the landlord lacks standing to bring this motion and second that it never expressly or impliedly consented to their payment of rent but in fact consistently pursued their motion to lift the stay to foreclose on their collateral. Last, Mead argues that the caselaw does not support the landlord's argument that rent be paid under section 506(c).

DISCUSSION

Mead's first argument that the landlord lacks standing to use section 506(c) to recover his claim must fail in light of the Trustee's subsequent joinder in this motion.[2] Accordingly, this court may properly analyze the landlord's position in light of section 506(c) which reads as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holders of such claim.

11 U.S.C. § 506(c).

In this circuit, any discussion of 506(c) must undoubtedly begin with the decisions in *General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73 (2d Cir.1984) (*"Flagstaff I"*) and *General Electric Creditor Corp. v. Pletz (In re Flagstaff Foodservice Corp.)*, 762 F.2d 10 (2d Cir.1985) (*Flagstaff II*).

In *Flagstaff I*, the Second Circuit Court of Appeals denied recovery to counsel for both the debtor-in-possession and creditors' committee who sought to have their fees satisfied out of the proceeds of the secured creditor's collateral. Section 506(c) recovery is proper, they held, where the expenses for the preservation or disposition of the property are incurred *primarily* for the secured creditor's benefit. *Flagstaff I*, 739 F.2d at 76 (emphasis added). Alternatively, a secured creditor may consent to the payment of administrative claims however "such consent is not to be lightly inferred." *Id.* at 77 (*citing In re S & S Industries, Inc.*, 30 B.R. 395, 398 (Bankr.E.D.Mich.1983)). And further, it should not be inferred merely from a secured creditor's cooperation with the debtor. *Id.*

This holding was elucidated in *Flagstaff II* where the Second Circuit Court of Appeals again denied 506(c) recovery this time sought to satisfy payroll taxes incurred during the debtor's attempted reorganization. Recovery was denied because they

---

**2.** The Trustee has unequivocally articulated his support for the landlord's plea that it be paid its administrative rent claim from the Mead proceeds. However he chose to support this position by reference to paragraph 3 of the Stipulation rather than section 506(c).

His joinder in the motion is vital because section 506(c) speaks only to the right of the trustee. Some courts have expressly recognized this limitation. *See, e.g., In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982) (stating that recovery under 506(c) may properly be brought by only a trustee or debtor-in-possession); *In re Fabian*, 46 B.R. 139, 141 (Bankr.E.D.Pa.1985)

(506(c) recovery limited to trustee). *But see General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73 (2d Cir.1984) (entertaining but denying applications for 506(c) recovery by attorneys for debtor-in-possession and creditors committee).

The Trustee's chosen avenue for support however is not fatal here to the landlord's motion because we find the Stipulation was intended by the parties to do no more or less than state the entitlements codified in section 506(c). Thus the Trustee's joinder embodies support under that section.

found the taxes were not paid for the *primary* benefit of the secured creditor. "Proof of direct benefits *sought* and received by [the secured creditor] is lacking in this case." *Flagstaff II*, 762 F.2d at 12 (emphasis added). Nor did they find that the secured creditor impliedly consented to the payment notwithstanding its consent to advance money intended to be used for certain other taxes. In the words of the Second Circuit:

> A secured creditor's consent to the payment of designated expenses limited in amount will not be read as a blanket consent to being charged with administrative expenses not included in the consent agreement.

*Id. See also In re West Post Road Properties Corp.*, 44 B.R. 244, 247–48 (Bankr.S. D.N.Y.1984); *In re Roamer Linen Supply, Inc.*, 30 B.R. 932, 936 (Bankr.S.D.N.Y. 1983).

With these decisions as a backdrop, we turn first to the argument that Mead consented to the payment of rent. Paragraph 3 of the Stipulation, as quoted *supra*, enumerates the expenses to which Mead consented to bear. Rent is not one. Nor was rent intended to be included as was evidenced through the parties' disclosure to this court that they could not agree to include it. Clearly Mead did not think it was an expense it ought to bear and thus refused to embody it in the Stipulation. Thus it would be an incredulous interpretation of these facts for this court to find that Mead consented. Such a finding would also ignore the decision in *Flagstaff I* which holds that "consent is not to be lightly inferred" and the decision in *Flagstaff II* which expressly held that agreeing to pay certain expenses is not a blanket consent to pay other administrative expenses. Nor can Mead's acquiescence to have the collateral auctioneed control since cooperation with the debtor or trustee should not lead to an inference of consent. *Flagstaff I*, 739 F.2d at 77 (citing *S & S Industries, Inc.*, 30 B.R. 395, 398 (Bankr.E. D.Mich.1983)). *See also Law Research Service, Inc. v. Crook*, 524 F.2d 301, 310 (2d Cir.1975).

Consent aside, we turn next to a more troubling argument that the primary benefit of remaining on the premises, and thus incurring rent expenses, was to preserve and dispose of Mead's collateral. This is so, the landlord argues, because there were no other assets to preserve or dispose of and the only assets on the premises were fully encumbered by Mead. Lastly, the landlord highlights the Trustee's belated assertion that, from day one, it never intended to assume the lease. This fact was first brought to the attention of this court by the Trustee at the hearing on this motion.

At first blush, the landlord's argument has some appeal. His gripe however is improperly directed at the secured creditor. Upon conversion of a case to chapter 7, the Trustee has a statutory 60 days to assume or reject the lease. 11 U.S.C. § 365(d)(1). Failure to assume the lease within that time period, absent a court ordered extension, results in rejection of the lease. *Id.* This breathing period allows the Trustee to evaluate the estate and evaluate the lease to determine whether it is in the estate's best interest to assume. In recognition of the importance of this time period, Judge Brozman, upon conversion of the case, adjourned the landlord's motion to lift the stay. Notwithstanding the landlord's objection, she did not want the Trustee to be stripped of his statutory right or "completely foreclose him from taking a look at [the lease]." (Trans. of Hearing of Dec. 17, 1985 at 10.) Indeed she was fully appreciative and sympathic to the landlord's efforts for she reduced the 60 day time period to 30 days.

The upshot is that the 30 day time period given to the Trustee was intended to benefit the estate and that benefit is afforded by the Code. Judge Brozman's ruling clearly spells out this intention. While housing and auctioning the collateral may have been benefits which inured to Mead, clearly they were not the primary objectives for allowing the Trustee to stay on the premises postconversion. *See, e.g., In*

828

*re Roamer Linen Supply, Inc.*, 30 B.R. 932 (Bankr.S.D.N.Y.1983) (that the secured creditor derived some benefit from the sale of its collateral, it does not follow they should bear the cost of all administrative expenses since any such benefit was incidental to the *primary objective*, namely to maximize the estate).

The key here is *primary* benefit. *See Flagstaff I* and *Flagstaff II*. And in this vein, it is of great significance that the Trustee did not recognize Mead's security interest as valid until February, 1986, a month after both the auction and surrendering of the premises. In fact, paragraph 6 of the Stipulation expressly reserved for the Trustee the right to challenge the security interest. That timing is critical because it highlights the fact that the Trustee remained on the premises with the collateral primarily for the estate's benefit. To say now that the premises were used primarily for Mead because their security interest later turned out to be valid would be like playing Monday morning quarterback which this court will not do.

In this context, both parties cite to the case of *In re Trim-X, Inc.*, 695 F.2d 296 (7th Cir.1982) to support their respective positions. However, we view that case as harmonious only with Mead's position. In *Trim-X*, the Trustee sought 506(c) expenses including use and occupation charges from a secured creditor for assets which he preserved but ultimately abandoned. In summary, the Seventh Circuit Court of Appeals agreed with the bankruptcy court as to its holding that the expenses incurred *prior* to the time the trustee determined the debtor had no equity in the assets *were not for the benefit of the secured creditor. Id.* at 301.[3] *Accord In re By The Sea Foods, Inc.*, 30 B.R. 262, 265 (Bankr.M.D.Fla.1983). While the facts at bar do not involve a section 554 abandonment by the Trustee, an analogy can be made as the Trustee here did eventually relinquish rights in the collateral and its proceeds but not until February, 1986 at the time he determined he would not challenge Mead's security interest. Until then, he was at least hopeful the estate would benefit and was acting on behalf of the estate as he is obligated to do. Thus, the theme in *Trim-X* carries through in our holding today.[4]

We agree with the landlord that the Code is not intended to allow a trustee to remain on the premises rent-free. Indeed section 365 arms a landlord with various protections and rights and sections 503(b)(1)(A) and 507(a)(1) provide a landlord with an administrative first priority for his postpetition rent. However, these rights and protections are not fool-proof guarantees. The "[p]ayment of administrative expenses traditionally has been the responsibility of the debtor's estate, not its secured creditor." *Flagstaff I*, 739 F.2d at 76; *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1983); *Seaboard National Bank v. Rogers Milk Products Co.*, 21 F.2d 414, 417 (2d Cir.1927). In the unfortunate event that the estate lacks unencumbered funds to pay the landlord's administrative rent claim, it does not follow that the secured creditor bears the expense. *See Flagstaff I*, 739 F.2d at 77; *In re S & S Industries*, 30 B.R. at 399.

Saddling Mead now with the rent charge would also be inequitable in light of its position throughout this case of consistently and affirmatively seeking to have the stay lifted to foreclose on its collateral. Their efforts to foreclose were twice confronted by judicial adjournments due to the procedural posture of the case. It would be inequitable to burden Mead at this time with expenses which it affirmatively sought to avoid.

The burden under 506(c) rests with the party seeking such recovery. *Flagstaff I*, 739 F.2d at 76; *In re Trim-X, Inc.* 695 F.2d at 299; *In re Korupp Associates, Inc.*, 30 B.R. 659, 661 (Bankr.D.Me.1983). For the reasons detailed above, Heights Plaza

---

3. The case was ultimately sent back to the bankruptcy court on the reasonableness issue.

4. *Trim-X* was cited with approval in the *Flagstaff* decisions.

failed to meet that burden. Accordingly, the motion is denied.

Settle Order consistent with this decision.