In re BAYER CADILLAC, INC., Debtor.

Bankruptcy No. 891–83866–20.

United States Bankruptcy Court,
E.D. New York,
Westbury Division.

March 2, 1994.

Harold S. Berzow, Finkel, Goldstein, Berzow & Rosenbloom, New York City, for debtor.

Kenneth Williamson, Williamson & Williamson, P.C., New York City, for General Motors Acceptance Corp.

Stan Y. Yang and Scott Y. Stuart, Office of the United States Trustee, Garden City, NY.

Gregory Messer, Chapter 7 Trustee, Jacoby & Meyers, Brooklyn, NY.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

The contested matter before the Court involves a dispute between two parties to a cash collateral stipulation: counsel to the debtor, Finkel, Goldstein, Berzow & Rosenbloom ("Debtor's Counsel") and a creditor holding a secured claim, General Motors Acceptance Corporation ("GMAC")

The Court has jurisdiction over this case pursuant to sections 157(a), 157(b)(1), and 1334 of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (K) and (O) of title 28.

For the reasons set forth below, the Court holds [1] that: (1) the meaning of the stipulation at issue is plain and unambiguous; (2) therefore, evidence of intent and of conversations of the parties not embodied therein is barred by the parole evidence rule; (3) Debtor's Counsel's request for an order, pursuant to the stipulation, directing payment by GMAC of its professional fees in the sum of $25,000 is meritless and **DENIED**; and (4) the administration of the case may be completed by the chapter 7 trustee.

### RELEVANT FACTS AND ANALYSIS

██ On August 29, 1991, Bayer Cadillac Inc. ("Debtor") filed a voluntary petition for bankruptcy relief under chapter 11 of title 11, United States Code ("Bankruptcy Code"). Debtor was in the business of operating an automobile dealership. By order dated on

1. The Court's full holding is set forth upon the final page of the opinion, at 453.

October 1, 1991, Debtor's Counsel was authorized to be retained by Debtor.

GMAC is a creditor that held liens upon essentially all of Debtor's assets, which included both new and used cars and the cash proceeds thereof, accounts receivable, tax refunds and the like. In October of 1991, GMAC and Debtor entered into a stipulation which authorized Debtor to use cash collateral[2] ("Cash Collateral Stipulation") and aided Debtor's continuance in business; the parties were authorized to enter into the Cash Collateral Stipulation by order dated October 31, 1991.

Paragraph numbered nine of the Cash Collateral Stipulation is the focus of this contested matter. Both GMAC and Debtor's Counsel note that this paragraph was the product of their negotiations. It is the actual meaning of the paragraph which is at dispute; in full, it provides:

> To the extent that the grant of the security interest confirmed and granted to GMAC in this Stipulation shall not be adequate to protect GMAC, GMAC shall have a claim which shall have priority over any and all administrative expense (except for any fees payable to the U.S. Trustee under Title 23 and professional fees not to exceed $25,000) of the kind specified in § 503(b) or § 507(b) of the Bankruptcy Code, except of the priority claim for compensation for any trustee appointed in this case in an amount up to $5,000.

Cash Collateral Stipulation ¶ 9.

Prior and subsequent to the execution of the Cash Collateral Stipulation, Debtor's Counsel performed legal services on behalf of Debtor with a view of assisting in the formulation of a plan of reorganization. Unfortunately, Debtor was unable to overcome its financial difficulties and on September 22, 1992, its case was converted to one under chapter 7 of the Bankruptcy Code.

The total amount of the fee submitted for the actual time spent by Debtor's Counsel is $55,991, and the amount sought for reimbursement of expenses is $1,423.31. Debtor's Counsel was initially paid a $20,000 retainer prior to the filing of the petition; it now seeks payment of the balance due of $37,414.31.

By correspondence dated September 22, 1992, Debtor's Counsel asserted that paragraph numbered nine of the Cash Collateral Stipulation provided grounds for it to obtain compensation for legal fees in the amount of $25,000 from GMAC. Letter of Harold S. Berzow, dated September 22, 1992. In particular, Mr. Berzow writes:

> I have reviewed the cash collateral stipulation made between [Debtor] and [GMAC]....
>
> Amongst other things, the stipulation provides in paragraph 9 for the limited subordination of GMAC's superior priority administrative expense claim to professional fees not to exceed $25,000.
>
> Since GMAC has seized its collateral and presumably received payment in full from General Motors on new car inventory and has satisfactorily liquidated its other collateral, I believe it is now appropriate to request GMAC to honor its subordination agreement and forward its check to our order in the amount of $25,000....
>
> It is my understanding that my firm was the only professional involved.
>
> ... Accordingly, the subordination provision only applies to my firm.

*Id.*

Writing in response to Mr. Berzow's letter, GMAC's attorneys disagreed that its client must pay $25,000 to Debtor's Counsel and asserted that such an interpretation of paragraph numbered nine is erroneous; the letter states:

---

2. *See* 11 U.S.C. §§ 363(a), 363(c)(2) (1994). "Cash collateral" is a defined term:

'Cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an equity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a under this title.

*Id.* § 363(a) (1994). A debtor may not use cash collateral unless it has consent from any entity holding an interest in the cash collateral or court ordered authorization. *Id.; see also id.* § 1107(a) (1994).

We are in receipt of your letter ... in which you request payment of $25,000 from GMAC for your professional fees based on paragraph 9 of the Cash Collateral Stipulation....

However paragraph 9 does not provide for compensation to counsel for the debtor by GMAC.

Paragraph 9 provides that in the event of the grant of the security interest to GMAC is not adequate to protect GMAC, GMAC will have a claim which shall have priority over all administrative expenses except for fees payable to the U.S. Trustee and professional fees not to exceed $25,-000.

This provision is to protect GMAC in the event its security interest in the debtor's property (the "collateral") is not sufficient to satisfy the indebtedness owed GMAC.

Should the collateral not satisfy the indebtedness owed, pursuant to the stipulation, GMAC may file a super priority claim in the proceeding. That claim has priority over all other claims other than the attorney fees up to $25,000 and trustee fees.

Paragraph 9 does not grant you any right to payment from GMAC, but instead prioritizes the rights of the parties in the estate in the event the collateral is insufficient to satisfy the indebtedness owed by the debtor to GMAC.

We trust this resolves any misunderstanding you had with regard to the terms of the stipulation....

Letter of Kenneth Williamson, dated October 1, 1992.

The parties did not resolve their dispute. Debtor's Counsel then obtained an order dated October 19, 1992, which provided for the filing of papers and for a hearing on this matter.

In its papers, Debtor's Counsel informs the Court of its own intent when executing the Cash Collateral Stipulation and of discussions with an attorney for the Office of the United States Trustee. In fact, in their entire pleading, the only discussion by Debtor's Counsel of paragraph numbered nine and its meaning provides:

11. Putting aside for a moment, the technicalities of the language employed in the stipulation, it was certainly the clear and unequivocal intent of [Debtor's Counsel] that absent a carve out for professional fees in the cash collateral stipulation, there would have been no basis for [Debtor's Counsel] to believe that it would be paid for future services rendered, inasmuch as practically all of the assets owned by the Debtor were covered by the GMAC security interest and lien.

12. Additionally, when the cash collateral stipulation first came up for consideration and discussion with the United States Trustee's Office, [the attorney] insisted that there be a professional fee carve out that would cover just not the Debtor's attorneys, but all professionals retained in the case.

Application of Debtor's Counsel, dated October 13, 1992, ¶¶ 11–12. Debtor's Counsel also noted a conversation had with the U.S. Trustee's Office, purporting to apprise the Court of the latter's policy regarding cash collateral stipulations and professional fees. *Id.* at 13.

Debtor's Counsel's intent and the conversations it recounts are both, however, extraneous to the Cash Collateral Stipulation, and neither was integrated therein. Consequently, consistent with the parole evidence rule, the sole manner in which to render them admissible is to establish that the Cash Collateral Stipulation, or at a minimum, its paragraph numbered nine, is ambiguous. *Zolar Pub. Co. v. Doubleday & Co.*, 529 F.2d 663, 666 (2d Cir.1975). *Loch Sheldrake Assocs. v. Evans*, 306 N.Y. 297, 305, 118 N.E.2d 444 (1954); *Finucane Co. v. Board of Ed.*, 190 N.Y. 76, 78, 82 N.E. 737 (1907).

Debtor's Counsel did not allege, nor demonstrate, nor cite authority in support of a contention that any language within the Cash Collateral Stipulation is ambiguous. It merely asked the Court to "Put[ ] aside for the moment, the technicalities of the language employed", and enforce the Stipulation in a fashion which utilizes their alleged intent. Application of Debtor's Counsel, dated October 13, 1992, ¶ 11. Unfortunately for Debtor's Counsel, it is well-settled that

where the terms of a written contract are clear and unambiguous the intention of the parties must be found therein, and extrinsic proof tending to substitute a contract different from that evidenced by the writing is inadmissible. *Loch Sheldrake*, 306 N.Y. at 305, 118 N.E.2d 444; *Oxford Com. Corp. v. Landau*, 239 N.Y.S.2d 865, 867, 239 N.Y.S.2d 865, 190 N.E.2d 230 (1963); *Mitchill v. Lath*, 247 N.Y. 377, 379, 160 N.E. 646 (1928) (parol evidence rule renders inadmissible evidence as to what parties to a written contract understood, or what they intended, where it contradicts or varies the clear and unambiguous terms of the instrument) (numerous citations omitted).

In contrast, GMAC does address the language contained in the Cash Collateral Stipulation and adequately establishes that there is no ambiguity. Response of GMAC, dated November 3, 1992, at 3 (*see also* Letter of GMAC quoted above at 4).

The plain meaning of paragraph numbered nine of the Cash Collateral Stipulation is that in the event GMAC's claim is not fully satisfied by all assets of Debtor, its resulting unsecured claim for the deficiency will be paid only after payment of fees of the U.S. Trustee's Office, up to $5,000, and fees of professionals, up to $25,000. This is the unambiguous language of the written contract, (*see* Cash Collateral Stipulation ¶ 9, quoted above), and as such may not be altered for it would violate the sound purpose of the parole evidence rule.

The rule is based upon an assumed intention of the parties, evidenced by an apparently complete written contract, to place themselves beyond the uncertainties of oral testimony, and the courts are not disposed to defeat this presumed intention of the parties. This rule is a protection against fraud and perjury, infirmity of memory, and the death of witnesses.... '[A]nd while its application may on occasion seem to work injustice "on the whole it works for good." '

RICHARDSON ON EVIDENCE § 603 at 599 (Jerome Prince) (10th ed. 1973 & Supp.1985) (quoting *Fogelson v. Rackfay Constr. Co.*, 300 N.Y. 334, 338, 90 N.E.2d 881 (1950)) (other citations omitted).

For all the reasons set forth, the Court holds that: (1) the meaning of the Cash Collateral Stipulation is plain and unambiguous; (2) evidence of intent and of any conversations not embodied therein is barred by the parole evidence rule and is therefore inadmissible; (3) Debtor's Counsel's request pursuant to the Cash Collateral Stipulation for an order directing payment by GMAC of its professional fees in the sum of $25,000 is **DENIED** as being meritless; and (4) the chapter 7 trustee is directed to complete administration of Debtor's case in accordance with this opinion and order, or to file with the Court a statement of those outstanding matters precluding such completion.

**SO ORDERED.**