**In re BLACKWOOD ASSOCIATES, L.P., Debtor.**

**HARVIS TRIEN & BECK, P.C., Plaintiff,**

**v.**

**FEDERAL HOME LOAN MORTGAGE CORPORATION, Blackwood Associates, L.P., Herbert Brien, Lismarc Realty Management Corp., and Public Service Electric and Gas Company, Defendants.**

Bankruptcy No. 891–83867–20.
Adv. No. 894–8244–20.

United States Bankruptcy Court,
E.D. New York.

Oct. 16, 1995.

Harvis Trien & Beck, P.C., Attn: Robert M. Trien, New York City, pro se for Plaintiff.

Hertzog, Calamari & Gleason, Attn: Carla E. Craig, New York City, for Defendant Federal Home Loan Mortgage Corporation.

Federal Home Loan Mortgage Corporation, Attn: Christopher P. Spera, Sr. Counsel, McLean, Virginia.

U.S. Trustee's Office/EDNY, Attn: David Hartheimer, Garden City, NY.

## DECISION AND ORDER DENYING SUMMARY JUDGMENT TO PLAINTIFF, AND GRANTING SUMMARY JUDGMENT TO DEFENDANT, FEDERAL HOME LOAN MORTGAGE CORPORATION

Robert John HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court [1] upon motion ("Motion") by Harvis Trien & Beck, P.C. ("HTB" or "Plaintiff") for summary judgment on its first claim for relief against Federal Home Loan Mortgage Corporation ("FHLMC" or "Defendant") pursuant to Federal Rule Bankruptcy Procedure 7056 and thereafter seeks a directive that FHLMC be directed to disgorge $535,556.00 of adequate protection payments it received and pay it to HTB as and for counsel fees and expenses previously awarded by this Court.

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (M) and (O) of title 28.

In opposition, FHLMC filed its motion for summary judgment ("Cross–Motion"). FHLMC also made a motion for a determination that it is entitled to a superpriority claim pursuant to 11 U.S.C. section 507(b), arguing that in the event of a disgorgement, this superpriority claim would be paid first and envelop any award of fees to be paid to HTB. In light of the Court's decision with respect to the instant motions, this motion is academic.

For the reason set forth below, HTB's Motion for summary judgment is **DENIED** and FHLMC's Cross–Motion is **GRANTED**.

### HISTORICAL OVERVIEW AND RELEVANT FACTS

The saga continues with respect to the parties' interpretation of a cash collateral stipulation entered into between FHLMC and Blackwood Associates, L.P. ("Debtor") on or about July 28, 1992 ("Cash Collateral Stipulation") and thereafter approved by this Court on August 31, 1992 ("Cash Collateral Order"). The provisions of the Cash Collateral Stipulation that require a judicial reading to resolve the instant dispute are:

8. *In the event that the Debtor misappropriates or attempts to misappropriate the Cash Collateral, defrauds or attempts to defraud FHLMC, or fails to make either the Adequate Protection Payment or the tax escrow payment FHLMC shall be entitled, after ten (10) days notice to Debtor during which period Debtor shall have the opportunity to cure such alleged default, to make application to the Court on notice to the Debtor for an Order granting FHLMC relief from the automatic stay to complete its remedies at law, including, without limitation, the appointment of a receiver and foreclosure of its interest in the Property.*

9. *In the event that relief from stay is obtained with respect to the Property, authorization to use Cash Collateral shall immediately terminate at FHLMC's option upon i) the appointment of a receiver for the Property, or ii) at any other date following the grant of relief from stay. At such time, all Cash Collateral shall be immediately paid in full to FHLMC.*

\*   \*   \*   \*   \*   \*

13. *FHLMC agrees that i) fees of the U.S. Trustee shall be paid from the Cash Collateral and, ii) Debtors counsels fees and disbursements approved by the Court upon requisite notice and application as required by the Bankruptcy Code and Rules shall be paid from the Cash Collateral. Nothing contained herein shall constitute a waiver of FHLMC's right to object on a substantive basis to particular amounts requested in any such fee application.*

Cash Collateral Stipulation, ¶ 8, 9, 13.

This Court's previous determination with respect to HTB's entitlement to compensation as attorneys for the Debtor pursuant to their second interim fee application is discussed in *In re Blackwood Assocs., L.P.,* 165 B.R. 108 (Bankr.E.D.N.Y.1994). We need not revisit the issue of entitlement. What does need to be addressed is *if* (emphasis added) the entitlement will be satisfied from disgorged adequate protection payments that had been received by FHLMC, Debtor's senior secured creditor.

By motion dated April 8, 1994, FHLMC sought reconsideration, amendment or clarification of this Court's Order and Decision dated March 30, 1994 ("March 30, 1994 Decision") that granted HTB's second interim fee application (the "Award"). The motion was denied and the Court opined that its independent review and analysis of the application and the Court's overall review and consideration of the posture of the case justified the Award. However, the Court did consider FHLMC's revelation that no funds had been generated from rental income on the property prior to March 31, 1993 [2] that were available to pay the Award.

---

2. On April 22, 1993 this Court entered an order granting FHLMC relief from the automatic stay declaring that the value of the property as of

March 31, 1993 was $25.3 million, and made a finding that "the Debtor has refused to make certain payments to FHLMC required under an

At the time of its March 30, 1994 Decision, this Court believed that based upon the information provided, or in this instance not provided, that there were sufficient monies available in the estate to satisfy the Award.

Based upon this disclosure the Court directed in a June 14, 1994 Order,

> ... to the extent that it seeks to require FHLMC to pay any portion of the fees and disbursements awarded, to commence an adversary proceeding to determine its rights, if any, to require FHLMC to disgorge any portion of the cash collateral received by FHLMC pursuant to the Cash Collateral Order, and to use such disgorged fees to pay HTB's allowed fees and disbursements.

HTB commenced the adversary proceeding with the gravamen of its complaint focusing on paragraph 13 of the Cash Collateral Stipulation and their belief that this "carve-out" was an unconditional and self-executing provision that would allow fees to be paid from the cash collateral.

HTB in its amended complaint dated November 29, 1994 asks the Court to award a judgment against FHLMC in the amount of $535,556.00 and to direct FHLMC to disgorge $535,556.00 from the cash collateral it received to satisfy that judgment.

FHLMC in its amended answer dated December 12, 1994 asserts that the complaint fails to state a cause of action upon which relief may be granted based upon their view that the provisions of the Cash Collateral Order do not give HTB any rights against FHLMC as there are no priority provisions or any other basis for the payment of fees to HTB once the automatic stay was lifted.

## DISCUSSION

■ Under Fed.R.Civ.P. 56(c) summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The fact that both parties have moved for summary judgment does not in and of itself say that there are no genuine issues of material fact. In this instance, both parties seek summary judgment based upon the express language of the Cash Collateral Stipulation.

HTB seeks summary judgment based upon this Court's previous actions with respect to the Cash Collateral Stipulation and their reading of the Cash Collateral Stipulation. That is, that the stipulation is enforceable against FHLMC with respect to their inalienable obligation to pay counsel fees. HTB relies on the unambiguous language of the Cash Collateral Stipulation. They rely on the fact that the Court placed its imprimatur on the Cash Collateral Stipulation when it was so ordered on August 31, 1992. They rely on this Court's March 30, 1994 Order providing for the Award. They rely on this Court's June 14, 1994 Order that denied FHLMC's motion for reconsideration or amendment of the Award.

On the other hand, FHLMC also seeks summary judgment based on their reading of the Cash Collateral Stipulation. FHLMC argues that the terms of the Cash Collateral Stipulation are explicit and unequivocal, *i.e.,* adequate protection payments had to be made so that the automatic stay would not be terminated, an event that could, that did, unilaterally terminate Debtor's authorization to use cash collateral. Contending that no material issue of facts exist with respect to the conditions and obligations as set forth in the Cash Collateral Stipulation, FHLMC believes they have met their burden to allow summary judgment.

■ Central to this Court's decision is the fact that the arguments presented revolve around a stipulation. One of the basic tenets of a stipulation is an agreement,

> . *The name given to any agreement made by the attorneys engaged on opposite sides*

agreed cash collateral order between the parties." "[T]he debtor has not and cannot going

forward provide adequate protection to FHLMC...."

*of a cause.... A voluntary agreement between opposing counsel.*

BLACK'S LAW DICTIONARY 1415 (6th ed. 1990).

A stipulation should:

· *Discuss the who, what, where, and why of the contested matter underlying the motion;*

· *Set forth the agreement of the parties to settle (particularly, that the agreement is in the best interests of both the debtor and the creditors in a bankruptcy case);*

· *Specify the terms of the settlement and any conditions or sequence of events that attach thereto; and....*

*Anthony Michael Sabino,* PRACTICAL GUIDE TO BANKRUPTCY § 7.2[3] (Business & Legal Reports, Inc. 1994).

This Court views the Cash Collateral Stipulation as being very specific and crystal clear with respect to the conditions that would allow the debtor to use cash collateral. Any actions to the contrary, *i.e.,* failure to make adequate protection payments or vacatur of the automatic stay would trigger a default. The carve-out, as provided in paragraph 13, existed during the efficacy of the Cash Collateral Stipulation.

Arguing that the Cash Collateral Stipulation provided a "true carve-out," HTB offers the Court a definition of carve-out as stated by Judge Conrad in *In re FYM Clinical Laboratory, Inc.,* No. 90 B 10954, 1993 WL 288541, at 5 n. 4 (Bankr.S.D.N.Y. June 17, 1993):

*Bankruptcy jargon defined as: to set aside, cut into pieces or reserve something, which typically belongs to someone else, for a specific purpose; typically to pay professionals or the U.S. Trustee.*

Following this definition, HTB believes FHLMC agreed to an absolute reserve in the Cash Collateral Stipulation for counsel fees.

■ This Court offers its definition of a "real carve-out" to aid the future negotiators of cash collateral stipulations that contemplate a carve-out.

*An agreed upon term in a cash collateral stipulation where a specific amount of the cash collateral, either in existence or to be generated, is earmarked for the payment of counsel fees and disbursements where the payment thereof is not conditioned upon a specific event or occurrence.*

■ Within the four corners of the stipulation, the agreement of the parties exists. Their bargained for exchange was reduced to a single writing. For HTB, the end result, the stipulation, is not what they meant, not what they thought about, and precisely what they regret. Any existing rejected drafts, letters, telephone conversations or memoranda, whose contents were not included in the Cash Collateral Stipulation are of no import to this Court. They are extraneous to the Cash Collateral Stipulation. *In re Bayer Cadillac, Inc.,* 164 B.R. 450 (Bankr.E.D.N.Y. 1994).

■ The exhibits attached to the moving papers, indicative of the negotiations, to the extent that they are offered to this Court for what should have been, are rejected. "Unfortunately, ... it is well-settled that where the terms of a written contract are clear and unambiguous the intention of the parties must be found therein, and extrinsic proof tending to substitute a contract different from that evidenced by the writing is inadmissible." *In re Bayer Cadillac, Inc.,* 164 B.R. at 452, (citations omitted).

Offering an argument that actually bolsters FHLMC's position that:

(i) HTB got what HTB consented to; and

(ii) whatever HTB may have compromised in their eagerness to obtain FHLMC's consent to use cash collateral, HTB would now like to edit in,

HTB now argues before this Court,

*Mr. Trien: ... I don't think that the draftsmanship was that poor, I think that the cash collateral order should be read the way we say it should be read, that is that we should, in all events, be paid from Freddie Mac's cash collateral....*

Transcript of July 13, 1995 hearing at 26.

Counsel for HTB argues strenuously that this Court should disturb the Cash Collateral Stipulation and rewrite into the stipulation that which does not exist within the four corners of the document.

The caliber of counsel representing Debtor is admirable, indeed the affidavits in support of their retention and requested fees confirm

this. If there were *any* doubt in their minds as to the ability to be paid for their efforts counsel could have easily negotiated a clause that would have provided that, in the event of a default in any of the provisions of the stipulation, counsel fees would still be paid from the cash collateral.

■ Allowing counsel fees to be paid from available cash collateral is a common practice. To ask this Court to require a secured creditor to disgorge adequate protection payments it received so that debtor's counsel can be paid is absurd. The mere filing of a chapter 11 petition does not guarantee a successful reorganization where at the end of the day all sides are happy. To the contrary, seasoned bankruptcy counsel know this and ensure that the time and expertise expended will be rewarded after the order awarding the compensation has been entered. Requiring FHLMC to disgorge any money to pay Debtor's counsel puts them in the unenviable position of having funded the attorneys' efforts at reorganization—single handedly and unsuccessfully.

For the reasons set forth, HTB's Motion for summary judgment as against FHLMC is **DENIED** and FHLMC's Cross–Motion for summary judgment is **GRANTED**.

**SO ORDERED.**