**In re BLACKWOOD ASSOCIATES, L.P., Debtor,**

**HARVIS TRIEN & BECK, P.C., Plaintiff–Appellant,**

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION, Defendant–Appellee,**

Blackwood Associates, L.P., Herbert Brien, Lismarc Realty Management Corp., and Public Service Electric & Gas Company, Defendants.

No. 97–5029.

United States Court of Appeals, Second Circuit.

Argued Dec. 12, 1997.

Decided Aug. 21, 1998.

Robert M. Trien, New York City (Harvis Trien & Beck, P.C., New York City, of counsel), for Plaintiff–Appellant.

Christopher P. Spera, McLean, VA (Federal Home Loan Mortgage Corporation, McLean, VA, of counsel; Carla E. Craig, Hertzog, Calamari & Gleason, New York City, of counsel and on the brief), for Defendant–Appellee.

Before: OAKES, CARDAMONE, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Plaintiff–Appellant Harvis Trien & Beck, P.C. ("HT & B") appeals from a judgment entered April 18, 1997, in the United States District Court for the Eastern District of New York (Thomas C. Platt, *Judge*), dismissing its claims against Defendant–Appellee Federal Home Loan Mortgage Corporation ("FHLMC" or "Freddie Mac"). This judgment was entered in accordance with a Memorandum and Order of the district court, dated April 15, 1997, which affirmed a Decision and Order of the United States Bankruptcy Court for the Eastern District of New York (Robert John Hall, *Judge*) granting summary judgment to Freddie Mac in a Chapter 11 adversary proceeding commenced by HT & B. HT & B had commenced this adversary proceeding seeking payment from Freddie Mac of certain counsel fees it had charged to Blackwood Associates, L.P. ("Blackwood" or "Debtor"), of whom Freddie Mac was a secured creditor. These fees related to HT & B's representation of Blackwood during the pendency of Blackwood's

Chapter 11 petition while Blackwood was operating under a cash collateral stipulation prior to confirmation of a plan of reorganization.

## I. BACKGROUND

Blackwood is a Delaware limited partnership whose sole asset was a multifamily apartment complex in Irvington, NJ, consisting of eight ten-story buildings containing 1,744 apartments (the "Property"). Freddie Mac held two perfected mortgages on the Property, in an aggregate principal amount of approximately $30 million. Freddie Mac also held a perfected absolute assignment and security interest in all rents and profits derived from the Property.

By 1991, Blackwood was experiencing severe financial problems. Blackwood was $800,000 behind in its mortgage payments, had insufficient funds to pay for necessary capital improvements to the Property (including replacing an inoperative heating system), was so far behind in property taxes that a tax sale of the Property was scheduled, and faced substantial regulatory fines for failure to keep the Property up to code. These problems caused Blackwood to file a petition for protection under Chapter 11 of the Bankruptcy Code (the "Code"), 11 U.S.C. §§ 1101–74, on August 29, 1991 (the "Petition"). Blackwood retained HT & B to represent it in relation to the Petition, pursuant to a general retainer authorized by the bankruptcy court on October 8, 1991.

Pursuant to § 363(c) of the Code, 11 U.S.C. § 363(c), during the pendency of the Petition, Blackwood could not use any "cash collateral," as that term is defined in § 363(a), without either the consent of Freddie Mac, which held a security interest in both the Property and the rents and profits derived therefrom, or authorization of the bankruptcy court. In this case, the cash collateral consisted of all rents and profits from the Property.

After the filing of the Petition, HT & B and Freddie Mac began negotiations concerning a consensual plan of reorganization for Blackwood. To allow Blackwood to function during the course of these negotiations,

HT & B and Freddie Mac, through its counsel, entered into a Cash Collateral Stipulation, dated July 28, 1992 (the "Stipulation"). The Stipulation was drafted primarily by HT & B but incorporated changes proposed by Freddie Mac and its counsel.

As relevant to this appeal, the Stipulation provided as follows. Blackwood was authorized to collect all cash collateral, defined in the Stipulation consistent with the Code as all "proceeds, products, rents, and profits," from the Property, and was obligated to deposit the cash collateral into a specified account. Stipulation ¶ 1. Blackwood was obligated to use the cash collateral to pay for the reasonable and necessary expenses incurred in operating the Property, including interest payments on a second mortgage not held by Freddie Mac, and escrow payments for property taxes. Id. ¶¶ 2–4. In addition, beginning in July 1992, Blackwood was obligated to make a monthly payment in the amount of $271,663 to Freddie Mac (the "Adequate Protection Payment"). Id. ¶ 5.

Paragraphs 8 and 9 of the Stipulation, delineated Freddie Mac's rights and remedies if Blackwood failed to comply with its obligations under the Stipulation. Specifically, ¶ 8 provided that if Blackwood failed to comply with its obligations, Freddie Mac was permitted, upon affording Blackwood ten days to cure any default, to move the bankruptcy court to lift the automatic stay imposed by § 362 of the Code, so as to allow Freddie Mac to pursue whatever remedies at law it may have. Paragraph 9, in turn, provided that upon any lifting of the automatic stay, Blackwood's "authorization to use Cash Collateral shall immediately terminate at FHLMC's option . . . . [and] all Cash Collateral shall be immediately paid in full to FHLMC."

Paragraph 13 of the Stipulation provided for payment of professional fees:

> FHLMC agrees that . . . Debtor's counsels fees and disbursements approved by the Court upon requisite notice and application as required by the Bankruptcy Code and Rules shall be paid from the Cash Collateral. Nothing contained herein shall constitute a waiver of FHLMC's right to object on a substantive basis to particular

amounts requested in any such fee application.

The Stipulation also provided that either party could seek modification of the Stipulation via motion to the bankruptcy court. Id. ¶ 14. By its terms, the Stipulation applied to all cash collateral received after, and all expenses incurred after, July 1, 1992. Id. ¶ 15 (A 46). The bankruptcy court, by Order dated August 31, 1992, approved the Stipulation, and authorized the use of the cash collateral consistent with its terms.

On March 5, 1993, HT & B filed an application with the bankruptcy court seeking a second interim allowance of compensation, in the amount of $535,556 for professional services rendered and out-of-pocket disbursements incident thereto for the period from May 16, 1992 through February 28, 1993.[1] The relationship between the parties had apparently soured somewhat by this time, and Freddie Mac objected to this application. The bankruptcy court held a hearing on the application on March 30, 1993, at the conclusion of which it reserved decision. The next day, the bankruptcy court held hearings on motions by Blackwood to confirm a plan of reorganization and to eliminate its obligations to make the Adequate Protection Payments, which it had already stopped making, and on a motion by Freddie Mac to lift the automatic stay for failure by Blackwood to make the Adequate Protection Payments pursuant to ¶ 8 of the Stipulation. At the conclusion of this hearing, the bankruptcy court granted Freddie Mac's motion to lift the automatic stay and denied as moot both of Blackwood's motions.

Blackwood appealed this decision to the district court. The district court affirmed the bankruptcy court's decision lifting the automatic stay and imposed sanctions on Blackwood for filing and pursuing a frivolous appeal. Blackwood then appealed to this Court. That appeal was withdrawn by stipulation of the parties, however, on the condi-

tion that Freddie Mac agree not to seek to enforce the award of sanctions.

Following the lifting of the automatic stay, Freddie Mac obtained the appointment of a receiver for the Property in the United States District Court for the District of New Jersey, and also subsequently obtained a judgment of foreclosure with respect to the Property. At the foreclosure sale of the Property, Freddie Mac bid and acquired title to the Property.

In a Decision and Order, dated March 30, 1994 (the "March 30 Order"), the bankruptcy court granted HT & B the fees it requested in its May 5, 1993 application, and directed Freddie Mac to pay HT & B these fees by April 19, 1994. *In re Blackwood Assocs., L.P.*, 165 B.R. 108 (Bankr.E.D.N.Y.1994). In granting HT & B's application, the bankruptcy court held that Freddie Mac's argument that the payment of such fees out of the cash collateral was impermissible under § 363 failed. The court noted that Freddie Mac had authorized the use of cash collateral to pay the fees in ¶ 13 of the Stipulation, and had retained the right only to object on a substantive basis. *See id.* at 111. The bankruptcy court also dismissed Freddie Mac's substantive objections to the particular fees requested. *Id.* at 111–14.

Freddie Mac then moved for reconsideration. In this motion, Freddie Mac argued that HT & B had failed to sustain its burden of reasonableness in regard to its fees, that the award was excessive in light of the results achieved, and that because the automatic stay had been lifted on March 31, 1993, HT & B was no longer entitled to be paid its fees and disbursements from the cash collateral. In its reply brief, Freddie Mac also argued that there was no cash collateral available, and that it would therefore have to disgorge monies received as Adequate Protection Payments to pay the fees.

While the motion for reconsideration was pending, HT & B submitted a proposed judg-

---

**1.** HT & B had previously filed a first interim fee application seeking payment for services rendered during the period from August 29, 1991 through May 15, 1992, during which time Freddie Mac was not receiving any Adequate Protection Payments. This application was approved by the bankruptcy court on June 25, 1992, and Freddie Mac paid HT & B $298,000 out of the cash collateral. This initial payment is not relevant to this appeal as this payment related to services provided before, and was approved before, the parties entered into the Stipulation.

ment seeking payment pursuant to the March 30 Order to the bankruptcy court. The bankruptcy court signed this proposed judgment on May 5, 1994, granting HT & B $535,556 plus interest from April 19, 1994.

On June 14, 1994, the bankruptcy court issued an order denying Freddie Mac's motion for reconsideration, but nonetheless vacating the prior judgment. In vacating the judgment, the bankruptcy court stated that it was doing so because, given FHLMC's representation that cash collateral did not exist at the time of the judgment, the judgment was not entered pursuant to an adversary proceeding as required by Bankruptcy Rule 7001. In explaining itself, the bankruptcy court stated:

> In rendering the Decision and Order dated March 30, 1994, the Court assumed that cash collateral generated from rents of the Property collected prior to March 31, 1993 that had been used by [Debtor] to pay operating expenses or to make Adequate Protection Payments ... was in existence and was to be the source of the payment of fees and disbursements awarded pursuant to HT & B's second interim fee application. Based on FHLMC's representation that there are no such funds ... in existence, HT & B is directed, to the extent that it seeks to require FHLMC to pay any portion of the fees and disbursements awarded, to commence an adversary proceeding to determine its right, if any, to require FHLMC to disgorge any portion of the cash collateral received by FHLMC....

Accordingly, HT & B filed an initial summons and complaint instituting an adversary procedure on June 7, 1994, and subsequently filed, pursuant to a stipulation, an amended complaint on November 29, 1994. This complaint sought a judgment directing Freddie Mac to disgorge sufficient cash collateral that it had received from Blackwood in the form of Adequate Protection Payments to pay for HT & B's fees and disbursements. Freddie Mac served its answer to the amended complaint on December 12, 1994, asserting five affirmative defenses: (1) failure to state a claim; (2) that the Stipulation merely provided authorization for Blackwood to use the Cash Collateral to pay HT & B, and did not grant HT & B any rights against Freddie Mac; (3) that the Stipulation granted HT & B no priority over other creditors of Blackwood; (4) that upon termination of the automatic stay Blackwood's right to use the Cash Collateral for any purpose terminated; and (5) that the Stipulation clearly provided that the payment of the Adequate Protection Payment, the tax escrow payment, and the regular operating expenses constituted a precondition to any payment of HT & B's fees.

HT & B and Freddie Mac both subsequently moved for summary judgment in this adversary proceeding, each contending that no genuine issues of material fact existed. The bankruptcy court, in a Decision and Order dated October 16, 1995, denied HT & B's motion and granted Freddie Mac's motion for summary judgment. *Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.),* 187 B.R. 856 (Bankr.E.D.N.Y.1995). In granting Freddie Mac summary judgment, the bankruptcy court found that the issue in the case was not whether HT & B was entitled to its fees, as the bankruptcy court had already found that it was, but rather whether "the entitlement will be satisfied from disgorged adequate protection payments" already received by Freddie Mac.

The bankruptcy court found that ¶ 13 of the Stipulation was not a true counsel fee "carve-out," as that term was defined in *In re FYM Clinical Lab., Inc.,* 1993 WL 288541, *5 n. 4 (Bkrtcy.S.D.N.Y. June 17, 1993), in that ¶ 13 did not provide for a "specific amount" to be set aside for a payment "not conditioned on a specific event or occurrence." *Harvis,* 187 B.R. at 861. Accordingly, the bankruptcy court construed the Stipulation as not requiring disgorgement. *Id.* at 860–61. In concluding, the bankruptcy court noted "Allowing counsel fees to be paid from available cash collateral is a common practice. To ask this Court to require a secured creditor to disgorge adequate protection payments it received so that debtor's counsel can be paid is absurd." *Id.* at 861.

HT & B appealed the bankruptcy court's decision to the district court. The district court affirmed the bankruptcy court in a Memorandum and Order dated April 15,

1997. The district court first focused on the appropriate standard of review. The district court noted that although the conclusions of law of the bankruptcy court are generally reviewed *de novo*, Freddie Mac had argued for a more deferential review here as the bankruptcy court was, at some level, interpreting its own order, as it had "so ordered" the Stipulation. The district court concluded that *de novo* review was nevertheless appropriate, given that the parties, rather than the bankruptcy court, had drafted the Stipulation.

In addressing the meaning of ¶ 13 of the Stipulation, the district court also began by focusing on the definition of the term "carveout," and the common use of such devices. The district court then noted that administrative expenses are not generally charged against secured creditors' collateral, unless the secured creditor explicitly consents to such, because the confirmation process primarily benefits unsecured creditors. Next analyzing the statutory basis for carve-outs, the district court noted that under § 363(e) the bankruptcy court may authorize the use of cash collateral in such a way, but "shall prohibit or condition such use . . . to provide adequate protection of such interest" of the creditor. Taking these facts together, the district court concluded that the Stipulation:

allowed Debtor to use cash collateral to pay certain expenses, including legal fees, and required Debtor to make Adequate Protection Payments to FHLMC. Though not obligated to do so, FHLMC consented to the legal fee arrangement on the condition that Debtor continue to make Adequate Protection Payments. The Stipulation merely allowed Debtor to pay attorney fees from available cash collateral; it did not provide HT & B with a priority. In light of that agreement, since no cash collateral is available, HT & B is not entitled to payment.

HT & B timely appealed.

## II. ANALYSIS

On appeal, HT & B again argues that the Stipulation unambiguously requires Freddie Mac to pay HT & B's fees out of the cash collateral, and as such Freddie Mac should be required to disgorge sums sufficient to pay HT & B's fees. Essentially, HT & B asserts that ¶ 13 of the Stipulation amounted to an unconditional counsel fee carve-out which required that HT & B be paid first without regard to Freddie Mac's Adequate Protection Payments. HT & B also contends, contrary to its assertions below, that even if ¶ 13 does not unambiguously require Freddie Mac to disgorge cash collateral, there are genuine issues of material fact sufficient to prevent summary judgment in favor of Freddie Mac. For the reasons that follow, we disagree with these arguments.

### A. *Standards of Review*

Freddie Mac contends that the bankruptcy court's decision, and implicitly the district court's affirmance of that decision, should be reviewed only for abuse of discretion. Freddie Mac argues that the bankruptcy court's interpretation of the Stipulation is entitled to increased deference because the bankruptcy court was, in essence, interpreting its own order. In pressing this argument, Freddie Mac cites to *Truskoski v. ESPN, Inc.*, 60 F.3d 74 (2d Cir.1995), in which we held that "[i]t is peculiarly within the province of the district court . . . to determine the meaning of its own order, and the court's interpretation of its order will not be disturbed absent a clear abuse of discretion." *Id.* at 77 (citations and internal quotations omitted).

We find *Truskoski* inapplicable to the facts of this case. The fundamental principle underlying our holding in *Truskoski* is the truism that the draftsman of a document is uniquely situated to understand the intended meaning of that document. In this case, this principle does not apply. The bankruptcy court did not draft the Stipulation, it merely approved the Stipulation as it was required to do by the Code and the Bankruptcy Rules. *See* Bankruptcy Rule 4001. The Stipulation was drafted primarily by HT & B, taking changes from Freddie Mac and its counsel. For purposes of review, the Stipulation is therefore more akin to a run-of-the-mill contract than to a court order, and the bankruptcy court's interpretation of the Stipulation is entitled to no special deference.

Accordingly, we review the district court's affirmance of the bankruptcy court in accordance with our well established standards of review. *See Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.),* 922 F.2d 984, 988 (2d Cir.1990). Specifically, we review a grant of summary judgment *de novo,* taking all factual inferences in favor of the non-moving party. *See Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey),* 130 F.3d 52, 55 (2d Cir. 1997), *cert. dismissed,* —— U.S. ——, 118 S.Ct. 2295, 141 L.Ed.2d 154 (1998). Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

B. *Interpretation of the Stipulation*

■ We first note that it is undisputed that so-called "counsel fee carve-outs" are a normal and enforceable provision in cash collateral stipulations. *See BII, Inc. v. Chapter 7 Trustee for IBI Sec. Serv., Inc. (In re IBI Sec. Serv., Inc.),* 133 F.3d 205, 208 n. 4 (2d Cir.1998); *see also In re Augie/Restivo Baking Co.,* 64 B.R. 236, 239 (Bankr.E.D.N.Y. 1986). The question here, however, is not whether counsel fee carve-outs are generally enforceable, but rather whether ¶ 13 of the Stipulation created a carve-out which granted HT & B a priority in payment over other creditors of Blackwood, including Freddie Mac, with respect to whatever fees it were to charge Blackwood. Based on the statutory context underlying cash collateral stipulations, and the text of the Stipulation itself, we hold that it did not. We also find that HT & B's new claim that the Stipulation is ambiguous, and that there are therefore genuine disputes of material fact sufficient to preclude summary judgment, was not raised either below or in the bankruptcy court and is accordingly waived. *See C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Ave. Partnership),* 113 F.3d 1304, 1309 (2d Cir.1997).

1. *The Statutory Context of the Stipulation*

Cash collateral stipulations are a type of agreement which exist solely because of a statute, namely the Code. Therefore, in order to properly understand the Stipulation, a brief review of the statutory context of the Stipulation is necessary. Under § 363(c)(2) of the Code,

> The trustee [or debtor in possession] may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless— (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2); *see also Vienna Park Properties v. United Postal Sav. Ass'n (In re Vienna Park Properties),* 976 F.2d 106, 111 (2d Cir.1992). If a debtor seeks authorization to use cash collateral from the bankruptcy court under § 363(c)(2)(B), rather than seeking the consent of a secured creditor under § 363(c)(2)(A), the bankruptcy court "shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection" for the secured creditor's interest. 11 U.S.C. § 363(e). The Stipulation was therefore necessary to allow Blackwood to use the Cash Collateral in any manner whatsoever. Further, absent the Stipulation, Freddie Mac would have had an absolute right to receive adequate protection payments before any use of the cash collateral by Blackwood.

■ As noted above, any agreement authorizing the use of cash collateral under § 363(c)(2) must be approved by the bankruptcy court. *See* Bankruptcy Rule 4001. In approving such an agreement, the bankruptcy court must satisfy itself that the agreement complies with the Code. *See* 9 Lawrence P. King, *et al,* Collier on Bankruptcy (15th ed. rev.1998), ¶ 4001.07[4]. This review is designed primarily to protect unsecured creditors, who are not parties to the agreement. However, a party to an agreement, generally a secured creditor, may waive rights that it has under the Code in

such an agreement. *See* id. (noting that "there is seldom any need to protect the parties to the agreement, who may be deemed to have waived their rights to the extent the agreement does not comply with the Code").

Sections 506(c) and 507 of the Code also supply statutory context relevant to the issue before us as they generally serve to afford a secured creditor's interest priority as against payment by the debtor of administrative expenses such as attorney's fees. Although a secured creditor's interest is generally not subject to diminution based on administrative expenses, under § 506(c), a debtor in possession "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c).

 Thus, absent an agreement to the contrary, a secured creditor's collateral may only be charged for administrative expenses, including attorney's fees, to the extent these expenses directly benefited that secured creditor. *See General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.)*, 739 F.2d 73, 76 (2d Cir.1984). However, if a secured party consents to allowing such administrative expenses, that party may be liable for such expenses even in the absence of conferred benefit, but "such consent is not to be lightly inferred." *Id.* at 77 (citation omitted). Further, "[i]t is not to be inferred merely because a secured creditor cooperates with the debtor." *Id.* (internal quotation omitted).[2]

 Next, § 507(b) of the Code provides a "superpriority" to certain claims of secured creditors:

If a trustee, under ... § 363 ... provides adequate protection of the interest of a holder of a claim secured by a lien on

property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from ... the use, sale, or lease of such property under §.363 of this title ... then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.·

In essence, § 507(b) means that a secured creditor has superpriority for a claim in the amount that the debtor's use of the collateral during the time of the stay diminished the value of the collateral, but only to the extent such diminution is in excess of the adequate protection received. As we stated in *General Elec. Credit Corp.*, "[u]nder the law as it presently exists, knowledgeable bankruptcy attorneys must be aware that the priority ordinarily given to administrative expenses may prove illusive in light of the various provisions in the Code for competing or super-priorities." 739 F.2d at 75 (internal quotation omitted).

The Code thus deliberately protects and preserves the interests of secured creditors in property in which they have a security interest, and accordingly takes the concept of adequate protection very seriously. The Code also establishes that a secured creditor's interest may only be diminished to the extent that the secured creditor waives its right to the protections afforded by the Code, or to the extent that the expense granted priority directly confers a benefit on the secured creditor. *See id.* at 77 ("Saddling unconsenting secured creditors with professional fees ... would discourage those creditors from supporting debtors' reorganization efforts.").

### 2. The Meaning of the Stipulation

 The Stipulation provides that: (1) Blackwood "shall" use the Cash Collateral to pay for necessary expenses, ¶ 2; (2) Black-

---

**2.** It should be noted that HT & B does not argue for payment under this section. Presumably, they do not do so because given the fact that a plan was never confirmed, it would seem difficult for them to show that Freddie Mac somehow directly benefited from their services. *See General Elec. Credit Corp.*, 739 F.2d at 76 ("Such benefits as might be said to have accrued to [the

secured creditor] from the attempt to reorganize were incidental to the reorganization efforts and did not fall within the intended scope of section 506(c)."). Further, given our holding in *General Elec. Credit Corp.*, it seems unlikely that consent, other than what might be found in the Stipulation, by Freddie Mac could be found.

wood "is authorized" to use the Cash Collateral to pay interest on a second mortgage, ¶ 3; (3) Blackwood "shall" use the Cash Collateral to make tax escrow payments, ¶ 4; (4) Blackwood "shall" use the Cash Collateral to make the Adequate Protection Payments, ¶ 5; and (5) Freddie Mac "agrees" that HT & B's fees and disbursements "shall be paid from the Cash Collateral," ¶ 13. Somewhat unclear from the above allowances is the relative priority of all these payments, *i.e.* if there is not sufficient cash collateral to make them all, which ones get paid first?

Paragraphs 8 and 9 of the Stipulation shed some light on the answer to this question. These paragraphs provide that if Blackwood fails to make either the Adequate Protection Payment or the tax escrow payment, Freddie Mac may seek to have the automatic stay lifted, and if Freddie Mac does obtain relief from the automatic stay, Blackwood's authorization to use the cash collateral in any manner under the Stipulation ceases. The terms of the Stipulation therefore imply that the Adequate Protection Payment and the tax escrow payment are of the highest priority.

The statutory context, as laid out above, confirms this reading of the Stipulation, and given the statutory basis for the Stipulation, we may properly look to the statutory context in interpreting the Stipulation as a matter of law. *See Walk–In Med. Ctrs., Inc. v. Breuer Capital Corp.,* 818 F.2d 260, 263 (2d Cir.1987) (noting that the determination of the ambiguity of a document should be made as if by "a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business") (citation omitted).

As previously noted, any use of the cash collateral by Blackwood required either the consent of Freddie Mac or court authorization, and if Blackwood had obtained court authorization, the court would have been required to provide Freddie Mac with adequate protection before authorizing any such use. Accordingly, under HT & B's reading of the Stipulation, Freddie Mac's agreement to al-

low cash collateral to be used to pay HT & B's fees would amount to a waiver of its statutory right not to have its interest in the Property diminished. Further, given the indeterminate nature of ¶ 13, HT & B's reading would mean that this waiver by Freddie Mac of its statutory rights extended to whatever fees HT & B were to charge Blackwood, without any potential dollar cap, and subject only to Freddie Mac's reserved right to make substantive objections to specific fees.

Given these facts, we find HT & B's reading of the Stipulation untenable, and hold that, as a matter of law, the Adequate Protection Payments had priority over the other uses of the cash collateral, including payment of HT & B's fees. This holding is premised on the fact that Freddie Mac had the statutory right to receive the Adequate Protection Payments, and the Stipulation is not so clear as to constitute a waiver of this right. In sum, we agree with the district court that the Stipulation allowed Blackwood to pay HT & B's fees out of the cash collateral, which it otherwise would not be allowed to do, but that the Stipulation did not grant HT & B's fees a priority over Freddie Mac's right to receive the Adequate Protection Payments. Accordingly, Freddie Mac is not required to disgorge any of the Adequate Protection Payments it received in order to pay HT & B's fees.

### III. CONCLUSION

Given our holding, we need not reach the other arguments put forward by Freddie Mac, and for the foregoing reasons, the judgment of the district court is AFFIRMED.