11-1737-bk
PNC Bank v. Enron Creditors Recovery Corp.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7th day of February, two thousand and twelve.

PRESENT:

JOSÉ A. CABRANES,
CHESTER J. STRAUB,
DEBRA ANN LIVINGSTON,
     *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
IN RE: ENRON CREDITORS RECOVERY CORP.,

     *Debtor.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
PNC BANK, NATIONAL ASSOCIATION, *as successor to*
NATIONAL CITY BANK,

     *Plaintiff-Appellant,*

     -v.-                                 No. 11-1737-bk

ENRON CREDITORS RECOVERY CORP.,

     *Debtor-Appellee.*[1]
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR APPELLANT:**                EDWARD M. FOX (Eric T. Moser, *on the brief*), K&L Gates LLP, New York, NY.

**FOR APPELLEE:**                AARON L. RENENGER (Matthew S. Barr, Michael T. Shepherd, *on*

---

[1] The Clerk of Court is directed to amend the official caption of this case as set forth above.

*the brief*), Milbank, Tweed, Hadley & McCloy LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**.

Plaintiff-appellant National City Bank ("NCB") appeals from a March 31, 2011 judgment of the District Court affirming the March 25, 2009 judgment of the Bankruptcy Court (Arthur J. Gonzalez, *Bankruptcy Judge*). We assume the parties' familiarity with the underlying facts and the procedural history of this case, some of which we briefly reiterate here.

This appeal arises out of a bankruptcy proceeding, now nearly a decade old, convened to reorganize and liquidate the scandal-plagued Enron Corporation ("Enron"). During the course of the bankruptcy proceeding, more than 150 Enron-affiliated entities (the "Enron Debtors") filed voluntary petitions for relief under the Bankruptcy Code. These petitions were procedurally consolidated for administrative purposes. *In re Enron Creditors Recovery Corp.*, No. 09 Civ. 4168, 2011 WL 1345254, at *1 (S.D.N.Y. Mar. 31, 2011) ("*Enron I*").

In October 2003, the Bankruptcy Court approved a stipulation between NCB, the Property Trustee for, *inter alia*, two Enron Trusts, and the Enron Debtors regarding NCB's rights under the then-proposed plan of reorganization (the "Stipulation"). Decretal Paragraph 16 of the Stipulation consisted of a priority payment clause known as a "most favored nation" clause (the "MFN Clause"), which provided that if "the Debtors" paid a higher percentage to any class of claims than they did to NCB, NCB's percentage recovery would increase to match the higher percentage. *Id.* A plan in bankruptcy (the "Enron Plan") was thereafter confirmed, which included a clause requiring that any payments made

by "the Debtors" pursuant to the Plan would be made "subject to" the requirements of the MFN Clause (the "MFN Preservation Clause").[2] *Id.* at *2.

After executing the Stipulation, but before confirmation of the Enron Plan, Enron sold off a group of affiliates known as the Dabhol Debtors. The Enron Plan, which was confirmed shortly after the sale, redefined the term "Debtors" to specifically exclude the Dabhol Debtors. *Id.* Six months later, NCB reserved its rights against the Enron Debtors under the MFN Clause, asserting that "it is at least possible that one or more of the [Dabhol] Debtors will pay or agree to pay a higher percentage distribution to their unsecured nonpriority creditors than is provided for under the . . . Stipulation or the [Enron] Plan." *Id.* (citation and internal punctuation omitted) (first alteration in original).

After the Enron Plan was confirmed, the Dabhol Debtors—whose new owners were entirely unaffiliated with Enron—confirmed their own plan of reorganization (the "Dabhol Plan"). The Dabhol Plan provided for a 100% payment to two unsecured creditors. NCB subsequently argued that the MFN Clause had been triggered by the Dabhol Plan, and that the Bankruptcy Court should therefore increase its recovery against the Enron Debtors to 100% as well. *Id.* at *2–3.

On March 25, 2009, the Bankruptcy Court held that the MFN Clause had not been triggered by the Dabhol Plan's 100% payment. The court first determined that "the plain meaning of the Most Favored Nation clause requires that the collective Debtors pay or agree to pay." The court then found that, while the Dabhol Debtors were included in the term "Debtors" as defined at the time of the October Stipulation, the Dabhol Debtors had been completely separated from the cases of the Enron Debtors before the latter paid the unsecured creditors—and before the confirmation of the Enron Plan. In the Bankruptcy Court's view, the Dabhol Debtors were no longer affiliated with, or under the control of, the Enron Debtors at the time of the confirmation of either the Enron or the Dabhol Plan, and

---

[2] The original MFN Clause provides that "[i]n the event the Debtors agree to pay, or pay, to any class of unsecured nonpriority claims of any Debtor . . . a higher percentage recovery than [NCB is] to receive under [an earlier plan of reorganization] pursuant to this Stipulation and Order, the percentage recovery paid to [NCB will] automatically increase to the same percentage recovery." *Enron I*, 2011 WL 1345254, at *1 (second alteration in original). The MFN Preservation Clause states that the distributions specified by the Plan shall be made "[o]n the Effective Date, . . . subject to the Debtors' obligations set forth in decretal paragraph 16 of the [October] Stipulation and herein." *Id.* at *2 (omission and second alteration in original) (emphasis omitted). The order of the Bankruptcy Court confirming the Plan included an MFN Preservation Clause identical to that stated in the Plan, and we therefore make no distinction between the two MFN Preservation Clauses.

therefore the Dabhol Debtors' payout could not have triggered the MFN Clause. The Bankruptcy Court therefore denied NCB's request for an additional recovery. *Id.* at *3.

The District Court affirmed the decision of the Bankruptcy Court. *Id.* at *6. First, the District Court found that the Enron Plan had superseded the Stipulation, and read the MFN Clause as if it were incorporated into the Enron Plan. *Id.* at *5. The court then found the Enron Plan to be "wholly unambiguous," as the Enron Plan "clearly describes the Debtors' obligations . . . and does not endorse, adopt, or otherwise reference any other provision of the October Stipulation." *Id.* The court determined that "[b]y . . . limiting itself to [referencing] 'decretal paragraph 16' of the October Stipulation, the [Enron] Plan clearly contemplates that the term 'Debtors' would be subject to the Plan's definition of that term and not the earlier definition set forth in paragraph C of the October Stipulation." *Id.* Therefore, the action of the Dabhol Debtors, who were specifically excluded from the Enron Plan's definition of "Debtors," did not trigger the MFN Clause. *Id.*

Next, the District Court held, in the alternative, that the Stipulation required collective action on the part of the Debtors (by any definition) in order to trigger the MFN Clause. *Id.* at *6. The Dabhol Debtors' action alone did not constitute collective action on the part of the Enron Debtors; therefore, whether or not the Dabhol Debtors were bound by the Enron Plan, their decision to pay 100% on their unsecured claims did not trigger the MFN Clause. *Id.* The District Court therefore affirmed the order of the Bankruptcy Court. *Id.*

On appeal, NCB argues that the District Court erred by (1) failing to ascribe legal meaning or effect to the MFN Preservation Clause (*see* note 1, *ante*); (2) affirming the Bankruptcy Court's determination that the MFN Clause was not triggered by the action of the Dabhol Debtors; (3) construing the MFN Preservation Clause such that it could never have any effect; (4) finding that the Enron Plan superseded the Stipulation; (5) using the definition of the word "Debtors" set forth in the Enron Plan rather than in the Stipulation; and (6) concluding that (a) collective action by the debtors as a whole was required to trigger the MFN Clause and (b) the action of the Dabhol Debtors did not rise to the level of collective action.[3]

---

[3] The appellant's seventh assignment of error is functionally identical to its first.

4

**DISCUSSION**

A.      **Standard of Review**

The standard for appellate review of a pure textual construction is *de novo*. *In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000). "Review of an order of a district court issued in its capacity as an appellate court is plenary." *In re Detrano*, 326 F.3d 319, 321 (2d Cir. 2003) (citations omitted). We therefore review "[t]he bankruptcy court's findings of fact . . . for clear error, and its conclusions of law . . . *de novo*." *Id.* While we typically afford a bankruptcy court's interpretation of its own order "customary appellate deference," *In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999), here the parties negotiated the Stipulation and presented it to the Bankruptcy Court for approval. Accordingly, we review the Bankruptcy Court's interpretation of the Stipulation *de novo*. *See In re Blackwood Assocs., L.P.*, 153 F.3d 61, 66 (2d Cir. 1998).

B.      **Collective Action**

Although the parties dispute whether the Enron Plan incorporated or was superseded by the Stipulation, we need not reach that issue, as both the District Court and the Bankruptcy Court held that the term "Debtors" in the Stipulation referred to the collective action of the debtors acting as a whole, and not to the actions of an individual debtor. Therefore, the courts held, the actions of the Dabhol Debtors did not qualify as actions of the "Debtors," because—even if they remained within the definition of "Debtors" for the purpose of the Plan—they did not act collectively with the other debtors. Appellant argues on appeal that the Dabhol Debtors' decision to pay their creditors at 100% constituted collective action *by the Dabhol Debtors*, and that therefore the Dabhol payment triggered the MFN Clause.

The District and Bankruptcy Courts were correct: NCB's argument is contrary to the plain meaning of the Stipulation. NCB claims that a clause in the Plan that sets all recovery equal to a certain computation means that the MFN Clause can never be triggered by action of the Enron Debtors, so the only remaining debtors who could act separately from the Enron Debtors, and whose collective action could be referenced by the Enron Plan, would be the Dabhol Debtors. This argument is unsound for several reasons, not the least of which is that the Enron Plan specifically excludes the Dabhol Debtors

5

from its definition of the term "Debtors."[4]  We therefore affirm the judgment of the District Court on the ground that the decision of the Dabhol Debtors to pay 100% of the disputed claims did not constitute the collective action necessary to trigger the MFN Clause.

CONCLUSION

Having conducted an independent review of the record, and without necessarily commenting on every aspect of the District Court's careful Memorandum and Order of March 31, 2011, we AFFIRM the judgment of the District Court.

FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court

---

[4] This wholly extratextual interpretation also forms the basis of NCB's third assignment of error, in which it alleges that the District Court interpreted the MFN Clause in a way that would never permit it to have any effect.  NCB therefore argues that the District Court's interpretation violates basic principles of contract interpretation, which instruct courts to interpret a contract so as to give meaning to each clause.  But "'rules of interpretation . . . must be taken as a guide, not a dictator.  The text should always be read in its context.'"  *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 87 n.4 (2d Cir. 2002) (quoting *United States v. Lennox Metal Mfg. Co.*, 225 F.2d 302, 311 (2d Cir. 1955)).  Read in context, the contract is unambiguous on its face.  We therefore decline to reinterpret the plain language of the contract.  *See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("'Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.'" (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989))).

6