**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 12-3069

———————

In re:  TOWNE, INC and DMD TOWNE, LLC,
Debtors


THE MARGOLIS LAW FIRM LLC,
Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-11-cv-05435)
District Judge: Honorable Katharine S. Hayden

———————

Argued May 31, 2013

Before:  JORDAN, VANASKIE, *Circuit Judges*, and
RAKOFF[*], *Senior District Judge*.

(Opinion Filed:  August 29, 2013)

Seth L. Dobbs, Esq. (Argued)
Martin G. Margolis, Esq.
The Margolis Law Firm LLC
5 Becker Farm Road, 4th Floor
Roseland, NJ 07068
        *Counsel for Appellant*

Anthony Sodono, III, Esq. (Argued)
Trenk, DiPasquale, Della Fera & Sodono, P.C.

———————

[*] The Honorable Jed. S. Rakoff, United States Senior District Judge for the United
States District Court for the Southern District of New York, sitting by designation.

347 Mt. Pleasant Avenue
Suite 300
West Orange, NJ 07052
        *Counsel for Appellee Joseph Newman*

Joann Sternheimer, Esq. (Argued)
Deily, Mooney & Glastetter, LLP
8 Thurlow Terrace
Albany, NY 12203
        *Counsel for Appellee BMW Financial Services LLC*

_____

OPINION

_____

VANASKIE, *Circuit Judge.*

The Margolis Law Firm LLC ("Margolis" or "The Margolis Law Firm") appeals from the District Court's denial of its motion to collect fees and expenses for its service as special counsel in the underlying bankruptcy case. Although such fees and expenses are ordinarily chargeable only against the surplus of a debtor's estate, Margolis seeks to collect them from proceeds of the sale of a secured creditor's collateral pursuant to section 506(c) of the Bankruptcy Code. Because we agree with the District Court that Margolis does not meet the requirements of section 506(c), we will affirm.

I.

We write primarily for the parties to this action. Moreover, the District Court has ably provided the relevant background. *See In re Towne, Inc.*, Civ. No. 11-5435 (KSH), 2012 WL 2401981 (D.N.J. June 25, 2012). Accordingly, we set forth only those facts necessary to our analysis.

This appeal arises out of bankruptcy proceedings instituted by two related debtors: Towne, Inc. ("Towne"), which owned a franchised BMW motor vehicle dealership in Oyster Bay, New York, and DMD Towne, LLC ("DMD"), which owned the real property upon which Towne's dealership was located. Towne and DMD (collectively, "Debtors") each filed voluntary petitions for bankruptcy under Chapter 11 of the Bankruptcy Code. The Bankruptcy Court consolidated the cases and appointed The Margolis Law Firm as special counsel.

BMW Financial Services, NA, LLC ("BMW FS") held a perfected first priority security interest in most of Towne's assets ("the Franchise"), and also held a perfected first priority lien on DMD's property ("the Property"). Together, Debtors owed BMW FS $9,006,951.67.

On April 1, 2009, Margolis notified the Bankruptcy Court that it had received an offer to purchase the Franchise and Property (collectively, "the Collateral") for six million dollars. Given that offer, BMW FS – which in the meantime had successfully obtained relief in the Bankruptcy Court from the bankruptcy stay so that it could take possession of the Collateral – agreed not to pursue immediate liquidation to give Debtors the opportunity to complete the sale. Because the offer was for less money than the amount of BMW FS's lien, however, BMW FS refused to consent to the sale unless Debtors signed certain releases. When Debtors refused to sign the releases, BMW FS, in turn, refused to consent to the sale, and the offer was withdrawn.

Several months passed without a successful sale of the Collateral. Thus, the Bankruptcy Court converted the case to Chapter 7 and appointed a trustee. Margolis then

3

withdrew from the case. The Chapter 7 trustee executed releases on the Debtor's behalf, and the Collateral was subsequently sold to affiliates of Len Stoler, Inc. ("LSI") for $5,525,000.00.

The Bankruptcy Court later approved fees in the amount of $84,585.11 in fees and $3,626.90 in expenses for Margolis' services as special counsel. Margolis filed a motion arguing it was entitled under 11 U.S.C. § 506(c) to collect these fees out of the proceeds of the sale of the Collateral. The Bankruptcy Court denied the motion, finding that Margolis did not meet the requirements of § 506(c). The District Court affirmed, and Margolis filed this appeal.

II.

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157. The District Court had jurisdiction under 28 U.S.C. §§ 158(a) and 1334, and we have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. We review the Bankruptcy Court's factual findings for clear error, but apply plenary review to its legal conclusions. *In re Visual Indus., Inc.*, 57 F.3d 321, 324 (3d Cir. 1995). Our review of the District Court's decision is plenary "because [it] sits as an appellate court in bankruptcy cases." *Id.*

Margolis seeks to collect fees and expenses out of the proceeds of the sale of the Collateral. In general, such fees and expenses are not chargeable against secured collateral. *Visual Indus.*, 57 F.3d at 324. Instead, they ordinarily may be charged only against the surplus of the debtor's estate. *Id.* However, section 506(c) of the Bankruptcy Code provides a limited exception to this rule, which allows a claimant to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses

4

of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ." 11 U.S.C. § 506(c).

Section 506(c) is designed to allow a claimant who has expended funds to preserve or dispose of secured collateral to recover those funds from the secured creditor who directly benefitted from them, thus "prevent[ing] a windfall to the secured creditor at the expense of the claimant." *Visual Indus.*, 57 F.3d at 325 (citing *IRS v. Boatmen's First Nat'l Bank of Kan. City*, 5 F.3d 1157, 1159 (8th Cir. 1993)). As we have explained, however, section 506(c) permits a claimant to recover expenses from the secured collateral only under "sharply limited" circumstances. *Id.* "[T]o recover expenses under § 506(c), a claimant must demonstrate that (1) the expenditures are reasonable and necessary to the preservation or disposal of the property and (2) the expenditures provide a *direct* benefit to the secured creditors." *In re C.S. Assocs.*, 29 F.3d 903, 906 (3d Cir. 1994).

Margolis asserts three theories for relief under section 506(c). First Margolis argues that the costs and expenses of its legal services "were reasonable and necessary to the preservation and disposition" of the Collateral (Appellant's Br. 12); second, Margolis asserts that BMW FS is estopped from denying that it benefitted from Margolis's services; and finally, Margolis argues that it should be able to recover its fees and expenses under section 506(c) because its efforts to sell the Collateral were thwarted only when BMW FS sought releases from Debtors in violation of New York law. We will discuss each theory in turn.

5

## A.

At the outset, we reject Margolis's argument that the proper inquiry under section 506(c) is "whether [a secured creditor] benefited *or could reasonably* have been expected to benefit from Special Counsel's efforts." (Appellant's Br. 18.) In support of this standard, Margolis cites to a 1980 decision from the Eastern District of Pennsylvania Bankruptcy Court. *See In re Hotel Assocs.*, 6 B.R. 108, 112 (Bankr. E.D. Pa. 1980). We have not adopted the standard articulated in *Hotel Associates*. Rather, we have read section 506(c) as requiring "a *direct* benefit to the secured creditors." *C.S. Assocs.*, 29 F.3d at 906.

Applying this standard, Margolis fails to meet the requirements of section 506(c) because it cannot demonstrate either that its expenditures were necessary to preserve or dispose of the Collateral, or that its efforts directly benefitted BMW FS. Although Margolis points to several services it undertook, including "exposing the Franchise and the Debtors' single purpose Facilities for sale," "soliciting prospective bids" for the Collateral, and "consummating purchase agreements," (Appellant's Br. 18), these efforts did not result in an actual sale. Instead, BMW FS, along with the Chapter 7 trustee, sold the Collateral to LSI after the case had been converted from Chapter 11 to Chapter 7 and Margolis had already withdrawn. As the District Court noted, an affidavit submitted by Eliot Wagonheim, an attorney who represented LSI in negotiations for the purchase of the Collateral, supports the Bankruptcy Court's conclusion that Margolis was not responsible for LSI's interest in, or eventual purchase of, the Collateral. *See Towne*, 2012

6

WL 2401981 at *7. We therefore agree that Margolis fails to prove that its efforts were necessary to the preservation or disposition of the Collateral.

Margolis also fails to demonstrate that it provided a direct benefit to BMW FS. Margolis argues its efforts prevented termination of the Franchise, and that this benefitted BMW FS by preserving the value of the Collateral. The Bankruptcy Court dismissed this assertion as "purely speculative," noting that BMW of North America, LLC ("the Franchisor") did not terminate the franchise after the case was converted to Chapter 7 and Margolis had withdrawn. (A. 7.) The District Court agreed, concluding that Margolis failed to prove that the franchise would have been terminated without its efforts. *Towne*, 2012 WL 2401981, at *7.

Furthermore, the Bankruptcy Court concluded that "the primary benefit of [Margolis's] legal services was to the Debtors . . . rather than to preservation of the collateral of BMW FS." (A. 8.) In making this finding, the Bankruptcy Court observed that Margolis seeks reimbursement for numerous services that were actually contrary to BMW FS's interests, including efforts to reduce the value of BMW FS's lien and conducting research that led to an administrative proceeding against BMW FS in state court. These findings are amply supported in the record and are not clearly erroneous.

We also reject Margolis's alternative argument that BMW FS consented to be surcharged for Margolis's efforts. Although some courts have considered a secured creditor's consent in analyzing a claim under section 506(c), *see, e.g., In re Flagstaff Foodserv. Corp.*, 739 F.2d 73, 77 (2d Cir. 1984), Margolis has shown no more than BMW FS's limited cooperation with its initial efforts to effectuate a sale of the

7

Collateral. BMW FS's limited cooperation does not demonstrate consent to be charged for all of Margolis's efforts. *Id.* ("'[Consent] is not to be inferred merely because a secured creditor cooperates with the debtor.'") (quoting *In re S & S Indus., Inc.*, 30 B.R. 395, 398 (Bankr. E.D. Mich. 1983)).

Accordingly, and for substantially the same reasons as the District Court, we conclude that Margolis did not demonstrate that the fees and expenses for which it seeks compensation were "reasonable, necessary costs and expenses of preserving, or disposing of, [the collateral]," 11 U.S.C. § 506(c), or that its expenditures provided a direct benefit to BMW FS.

B.

Margolis next asserts that BMW FS is estopped from denying that it benefitted from Margolis's services because BMW FS "secretly collaborated with [Franchisor] and Debtor's trustee for the purpose of achieving various unlawful objectives." (Appellant's Br. 23.) Specifically, Margolis contends that BMW FS, Franchisor, and LSI conducted a "comfortable, concealed relationship," which resulted in "favoritism" that led to the sale of the Collateral to LSI. (Id. 23, 24.) Margolis asserts that this concealed collaboration led it to perform extensive work in vain.

We need not address the merit of these claims because, as the District Court explained, Margolis "cites no case, statute, or other authority to indicate that such a form of estoppel has ever been recognized." 2012 WL 2401981, at *9. We therefore reject Margolis's contention that BMW FS is estopped from denying that it benefitted from the efforts of the Margolis Law Firm.

8

C.

Finally, Margolis argues that BMW FS "impeded the sale of the franchise and facilities in order to secure releases . . . in direct contravention of the New York Franchised Motor Vehicle Dealer Act." (Appellant's Br. 28.) Like the District Court, we express no view on the merits of this argument because the question of whether or not BMW FS sought releases from Debtors in violation of New York law is not relevant to our analysis under section 506(c). Margolis cannot identify language in section 506(c) or prior cases of ours supporting its theory that a secured creditor's allegedly unlawful conduct justifies relief to a claimant under section 506(c). Thus, we conclude that Margolis's argument that BMW FS violated New York law, even if true, would not provide a ground for relief under section 506(c).

III.

For the foregoing reasons, we will affirm the order of the District Court.